**STATE of Tennessee**

v.

**Kiara Tashawn KING.**

Supreme Court of Tennessee,
at Nashville.

Feb. 6, 2014 Session.

April 23, 2014.

Hershell Koger (on appeal), Pulaski, Tennessee, and Forest A. Durard, Jr. (at trial and on appeal), Shelbyville, Tennessee, for the appellant, Kiara Tashawn King.

Robert E. Cooper, Jr., Attorney General and Reporter; William E. Young, Solicitor General; Clarence E. Lutz, Assistant Attorney General; Mark A. Fulks and Rachel E. Willis, Senior Counsel; Robert Carter, District Attorney General; and Weakley E. Barnard, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

GARY R. WADE, C.J., delivered the opinion of the Court, in which JANICE M. HOLDER, CORNELIA A. CLARK, WILLIAM C. KOCH, JR., and SHARON G. LEE, JJ., joined.

The defendant pled guilty to aggravated burglary and theft of property over five hundred dollars. The trial court imposed concurrent, Range I sentences of five years and one year and six months, respectively, all to be served on probation. On appeal, the defendant contended that the trial court erred by imposing excessive sentences and by denying her application for judicial diversion. The Court of Criminal Appeals affirmed. We granted the

application for permission to appeal in order to clarify the appropriate standard of appellate review for the grant or denial of judicial diversion. We hold that when the trial court places on the record its considerations for the grant or denial of judicial diversion, the determination should be given a presumption of reasonableness on appeal and reviewed for an abuse of discretion. In the absence of appropriate considerations on the record, the appellate court should either remand for reconsideration or perform a de novo review. After our own de novo review of this record, we hold that the defendant is not entitled to judicial diversion.

## I. Facts and Procedural History

On October 5, 2011, nineteen-year-old Kiara Tashawn King (the "Defendant") pled guilty to aggravated burglary, a Class C felony, and theft of property having a value in excess of $500 but less than $1000, a Class E felony.[1] The underlying facts which led to the convictions are not in material dispute.

At approximately 7:30 p.m. on May 8, 2011, Laura Watt (the "victim") sat on her neighbor's front porch in Marshall County when a vehicle entered the driveway of her residence. The driver of the vehicle remained behind the wheel while a female and two male passengers stepped out of the vehicle and entered the victim's residence. As the victim proceeded toward her residence in order to investigate, she encountered the three burglars. One of the male burglars was carrying the victim's television. The female burglar, who was later identified as Mariah Janee McCutcheon, drew a gun, and one of the two males urged her to shoot the victim. When the victim's father, Jerry Watt, arrived at the residence, McCutcheon pointed her weapon in his direction. The same male burglar urged her to shoot. At that point, the other male burglar dropped the television, and all three burglars hurriedly entered their vehicle and were driven away. Marshall County Deputy Drew Binkley received the license plate number of the getaway vehicle and was dispatched to the scene. The Defendant was identified as the owner of the vehicle. Later, the police arrested the Defendant, McCutcheon, and Jacobi Domonique Vaughn Moore. The fourth individual involved in the burglary was a juvenile.

At the sentencing hearing, Crystal Gray, the probation officer who prepared the pre-sentence report, testified that the Defendant had made conflicting statements during the police investigation. In her first statement to Detective Jimmy Oliver, the Defendant claimed that Moore called to ask for a ride to a friend's house and that upon her arrival Moore, the juvenile, and a female entered her vehicle. Moore then directed her to drive to the victim's residence. According to Gray, the Defendant informed the detective that she remained in the vehicle during the burglary and also claimed she was unaware that her passengers intended to burglarize the victim's residence. Gray testified that the Defendant acknowledged to the detective that, as she returned to Rutherford County with the three individuals, she received a call from her brother, who informed her that the police were looking for her.

In a second statement, made a day later to Detective Oliver, the Defendant recalled that the incident was initiated by McCutcheon, who had sent her a text message asking her to act as a getaway driver so they could "hit a lick"—meaning "break into a house or something like that." According to Gray, the Defendant also admitted her participation as the getaway driver

---

**1.** *See* Tenn.Code Ann. §§ 39–14–403 (2010), – 105(2) (2010 & Supp.2013).

for Moore and McCutcheon in a prior burglary and theft, which had taken place one or two weeks earlier. Gray further testified that when she questioned the Defendant directly for purposes of the pre-sentence report, the Defendant gave a third inconsistent statement, denying that her companions had informed her that they needed her assistance with a burglary, insisting that she had no knowledge that McCutcheon carried a firearm, and denying her involvement in the earlier burglary.

The pre-sentence report indicated that the Defendant graduated from Smyrna High School in 2010 with a grade point average of 1.86. Her ACT score was twenty-three. The Defendant's disciplinary record in school included ten incidents of tardy attendance. Although unemployed at the time of the sentencing hearing, the Defendant had worked with a temporary employment agency after her graduation.[2] She also reported that she had been accepted to an educational program for radiologic technology.

Pamela King, the Defendant's mother, testified that the Defendant had never been in trouble. She confirmed that during high school the Defendant had served as the football manager and had participated in track and field. According to King, the Defendant also performed volunteer work, organizing sporting events for young men throughout Rutherford County. She stated that she was shocked to learn of her daughter's involvement in this incident and indicated that she would assist her during a conditional period of release. Rickie King, the Defendant's father, also testified

that he would assist the Defendant in complying with any court-ordered guidelines.

At the conclusion of the sentencing hearing, the Defendant requested judicial diversion on each of the two charges. The trial court acknowledged that, unlike the Defendant, her two co-defendants had prior records and serious disciplinary issues and that McCutcheon had employed a firearm. Further, the trial court described the Defendant as a follower and not a leader, observing that "[e]ven though she drove the car, ... if it hadn't been for the other one[s,] she never would have been involved in this." Nevertheless, the trial court denied the Defendant's request for judicial diversion and sentenced her as a Range I, standard offender, imposing a five-year sentence for the aggravated burglary charge (two years above the minimum)[3] and a concurrent sentence of one year and six months for the theft charge (six months above the minimum),[4] all to be served on probation. As a condition of her probation, the trial court ordered the Defendant to complete victim impact classes, maintain gainful employment, and pay court fees and restitution.

On direct appeal, the Court of Criminal Appeals affirmed, upholding the sentences and ruling that the trial court had properly denied the application for judicial diversion. *State v. King*, No. M2012–00236–CCA–R3–CD, 2013 WL 793588, at *5, *8 (Tenn.Crim.App. Mar. 4, 2013). In reaching this conclusion, the Court of Criminal Appeals observed that although the trial court had failed to expressly consider and weigh all seven of the common law factors

---

**2.** The Defendant had obtained full-time employment by the time the trial court rendered its sentencing decision.

**3.** The Range I sentence for aggravated burglary, a Class C felony, is three to six years. Tenn.Code Ann. § 40–35–112(a)(3) (2010).

**4.** The Range I sentence for theft over $500, a Class E felony, is one to two years. *Id.* § 40–35–112(a)(5).

that govern the judicial diversion process, *see* *State* *v.* *Electroplating, Inc.*, 990 S.W.2d 211 (Tenn.Crim.App.1998); *State v. Parker*, 932 S.W.2d 945 (Tenn.Crim.App. 1996), the "stringent procedural requirements" set forth in *Parker* and *Electroplating* "can no longer be considered governing law" in light of this Court's recent rulings in *State v. Bise*, 380 S.W.3d 682 (Tenn.2012), and *State v. Caudle*, 388 S.W.3d 273 (Tenn.2012). *King*, 2013 WL 793588, at *6–8. Citing the "sea [ ] change in the legal landscape concerning appellate review of virtually every aspect of sentencing," *id.* at *6, the Court of Criminal Appeals determined that it was no longer required to "reverse[ ] a trial court's decision to deny judicial diversion merely because the trial court failed to expressly consider one or more of the seven legally-relevant factors (or merely because it failed to specify why some factors outweighed others)," *id.* at *7.

This Court granted the Defendant's application for permission to appeal to determine (1) whether the trial court abused its discretion by imposing excessive sentences; (2) whether the standard of appellate review articulated in *Bise*, *Caudle*, and *State v. Pollard*, No. M2011–00332–SC–R11–CD, 2013 WL 6732667 (Tenn. Dec. 20, 2013), applies to judicial diversion; (3) if so, whether the abuse of discretion standard of review accompanied by a presumption of reasonableness abrogates the common law requirement to consider the factors set forth in *Parker* and *Electroplating*; and (4) whether, under the appropriate standard of review, the trial court erred by denying judicial diversion.

## II. Analysis

### A. Length of Sentence

■ Although the Defendant concedes that the trial court imposed sentences that are within the appropriate sentencing ranges, she argues that she is entitled to the minimum sentences because the trial court abused its discretion by failing to adhere to the purposes and principles of our sentencing act. The crux of her argument is that the record inadequately demonstrates the reasons for the length of her sentences which, she claims, is disproportionate to those of her co-defendants, thereby violating the requirement "to assure fair and consistent treatment of all defendants by eliminating unjustified disparity in sentencing and providing a fair sense of predictability of the criminal law and its sanctions[.]" Tenn.Code Ann. § 40–35–102(2) (2010).

■ When a defendant challenges the length of a sentence that falls within the applicable statutory range and reflects the purposes and principles of sentencing, the appropriate standard of appellate review is abuse of discretion accompanied by a presumption of reasonableness. *Bise*, 380 S.W.3d at 706–07.[5] In determining what sentence a defendant should receive within a particular range, the trial court considers the evidence presented at the sentencing hearing, the pre-sentence report, any sentencing alternatives, the nature of the criminal conduct, statutory mitigating and enhancement factors, statistical information provided by the administrative office of the courts, and any statement made by

---

5. This presumption of reasonableness differs from the standard of appellate review employed by the federal courts, which involves a two-step substantive/procedural determination of reasonableness with emphasis on the application of the Federal Sentencing Guide-

lines. *See* *Gall v. United States*, 552 U.S. 38, 51, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007); *Rita v. United States*, 551 U.S. 338, 354–55, 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007). We declined to adopt the federal approach in *Pollard*, 2013 WL 6732667, at *8 n. 3.

the defendant. Tenn.Code Ann. § 40–35–210(b)(1)–(7) (2010).

In the case before us, as the Court of Criminal Appeals noted, "the trial court did not engage in a scripted recitation of the applicable enhancing and mitigating factors[.]" *King*, 2013 WL 793588, at *5. Despite our adoption of a more deferential standard of review in *Bise*, we have continued to emphasize the need for trial courts to "place on the record, either orally or in writing, what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, in order to ensure fair and consistent sentencing." *Bise*, 380 S.W.3d at 705–06 n. 41 (emphasis omitted) (quoting Tenn.Code Ann. § 40–35–210(e)). This serves to promote meaningful appellate review and public confidence in the integrity and fairness of our judiciary. As we explained in *Bise*, however, "[m]ere inadequacy in the articulation of the reasons for imposing a particular sentence ... should not negate the presumption [of reasonableness]." *Id.* at 705–06. Thus, "while a trial court's less comprehensive findings may require appellate courts to more carefully review the record, sentences should be upheld so long as the statutory purposes and principles, along with any applicable enhancement and mitigating factors, have been properly addressed." *Id.* at 706.

The Court of Criminal Appeals correctly observed that although the trial court did not "specifically referenc[e] particular enhancing or mitigating factors by name, the [trial] court discussed on the record various factors that were of importance to it in setting [the] sentence." *King*, 2013 WL 793588, at *5. The trial court considered the pre-sentence report, specifically delaying the entry of judgment until it could "study [the report] and do justice to it," and the court noted the Defendant's lack of criminal history, the fact that she was not the mastermind behind the burglary and theft, and the fact that no one was physically harmed as a result of the crimes. Ultimately, however, the trial court determined that the Defendant, while "susceptible to being led into trouble by other people," was aware of the plan to commit the burglary, which involved the employment of a firearm by one of the Defendant's companions. Because the trial court placed its reasons for the imposition of an effective five-year sentence on the record, the presumption of reasonableness prevails. Moreover, although the Defendant received a longer sentence than McCutcheon, who received a four-year sentence, and Moore, who received a sentence of three years and three months, the trial court granted the Defendant probation while ordering incarceration for her co-defendants, thereby individualizing the sentences. In short, the sentences imposed by the trial court were within the applicable statutory ranges and the record sufficiently reflects the trial court's consideration of the purposes and principles of sentencing. In our view, therefore, the trial court did not abuse its discretion by imposing a five-year sentence for the aggravated burglary and a concurrent sentence of one year and six months for the theft.

## B. Judicial Diversion

The Defendant further contends that the Court of Criminal Appeals erred by granting a presumption of reasonableness to the trial court's decision to deny judicial diversion and that the trial court abused its discretion by denying judicial diversion. In our assessment, the standard of review adopted in *Bise* applies to judicial diversion. That does not mean, however, that our ruling in *Bise* abrogated the common law factors governing judicial diversion, as set forth in *Parker*, 932

S.W.2d at 958, and *Electroplating,* 990 S.W.2d at 229. Because the trial court did not demonstrate its consideration of those factors on the record, the presumption of reasonableness does not apply in this instance. Nevertheless, upon de novo review, we hold that the trial court properly denied judicial diversion.

■ Judicial diversion is a form of "legislative largess" available to qualified defendants [6] who have entered a guilty or nolo contendere plea or have been found guilty of an offense without the entry of a judgment of guilt. *State v. Schindler,* 986 S.W.2d 209, 211 (Tenn.1999); *see also* Tenn.Code Ann. § 40–35–313(a)(1)(A), (B); *State v. Turco,* 108 S.W.3d 244, 248 (Tenn. 2003). Eligibility under the statute does not, however, constitute entitlement to judicial diversion; instead, the decision of whether to grant or deny judicial diversion is entrusted to the discretion of the trial court. See Tenn.Code Ann. § 40–35–313(a)(1)(A) ("The court *may* defer proceedings against a qualified defendant...." (emphasis added)); *State v. Turner,* No. M2013–00827–CCA–R3–CD, 2014 WL 310388, at *4–5 (Tenn.Crim.App. Jan. 29, 2014).

If the trial court chooses to grant judicial diversion, the judgment of guilt is deferred and the defendant is placed on conditional probation. Tenn.Code Ann. § 40–35–313(a)(1)(A). Upon the successful completion of the probationary period and the dismissal of the charges, a defendant may seek an expungement of the record,

*id.* § 40–35–313(a)(2), (b), the effect of which " 'is to restore the person, in the contemplation of the law, to the status the person occupied before such arrest or indictment or information,' " *Schindler,* 986 S.W.2d at 211 (quoting Tenn.Code Ann. § 40–35–313(b)). On the other hand, if an individual violates the terms of the probation, "the court may enter an adjudication of guilt and proceed as otherwise provided." Tenn.Code Ann. § 40–35–313(a)(2). A sentence may be imposed only after the individual is found to have violated his or her probation. *State v. Hensley,* No. E2012–00812–CCA–R3–CD, 2013 WL 793579, at *4 (Tenn.Crim.App. Mar. 4, 2013) (recognizing that the consequence for violating a term of the judicial diversion probationary period is within the discretion of the trial court).

Traditionally, the grant or denial of judicial diversion has been left to the sound discretion of the trial court and, on appeal, the question has been whether the trial court abused its discretionary authority.[7] *Turco,* 108 S.W.3d at 246 n. 5; *State v. Kyte,* 874 S.W.2d 631, 634 (Tenn.Crim. App.1993). Although our appellate courts have long recognized that a trial court's decision to grant or deny diversion will not be reversed absent an abuse of discretion, *Kyte,* 874 S.W.2d at 634; *State v. Anderson,* 857 S.W.2d 571, 572 (Tenn. Crim.App.1992), the trial court has been required, in addition to ensuring that an applicant for judicial diversion is a statuto-

---

6. At the time of the offenses, the term "qualified defendant" was statutorily defined as a defendant who:

   *(a)* Is found guilty of or pleads guilty or nolo contendere to the offense for which deferral of further proceedings is sought;
   *(b)* Is not seeking deferral of further proceedings for a sexual offense, a violation of § 71–6–117 or § 71–6–119, or a Class A or Class B felony; and

   *(c)* Has not previously been convicted of a felony or a Class A misdemeanor.
   Tenn.Code Ann. § 40–35–313(a)(1)(B)(i) *(a)-(c)* (2010).

7. Although less common, we note that the State may appeal the trial court's decision to grant judicial diversion, and this decision is subject to the same standard of appellate review. *State v. Harris,* 953 S.W.2d 701, 705 (Tenn.Crim.App.1996).

rily "qualified defendant," to consider seven common law factors in determining whether to grant diversion, *Parker*, 932 S.W.2d at 958, and to explain on the record the reason for its decision after weighing all of the factors, *State v. Bonestel*, 871 S.W.2d 163, 168 (Tenn.Crim.App.1993), *overruled on other grounds by State v. Hooper*, 29 S.W.3d 1, 9 (Tenn.2000). If the trial court adhered to these requirements, the appellate court would defer to the trial court's discretionary authority and would "not revisit the issue if the record contain[ed] any substantial evidence supporting the trial court's decision." *Electroplating*, 990 S.W.2d at 229. In the absence of such findings on the record, however, the appellate court would be required to conduct a de novo review to "determine whether the trial court reached the correct result notwithstanding its failure to explain its reasoning." *Id.*

After our ruling in *Bise*, 380 S.W.3d at 707, some panels of our Court of Criminal Appeals have disagreed as to whether the appellate courts should continue to apply the standard of review described above, or whether the *Bise* standard of review-abuse of discretion accompanied by a presumption of reasonableness-should apply to a trial court's decision to grant or deny judicial diversion. *Compare State v. Smith*, No. W2012–01455–CCA–R3–CD, 2013 WL 2150674, at *5 (Tenn.Crim.App. May 16, 2013) (applying a presumption of reasonableness to the trial court's denial of judicial diversion), and *State v. Green*, No. W2011–02593–CCA–R3–CD, 2013 WL 1282319, at *9 n. 1 (Tenn.Crim.App. Mar. 28, 2013) (acknowledging that *Bise* and *Caudle* apply to judicial diversion), with *State v. Rutherford*, No. W2012–01723–CCA–R3–CD, 2013 WL 6254675, at *6 n. 3 (Tenn.Crim.App. Dec. 3, 2013) (disagreeing that *Bise* and *Caudle* apply to judicial diversion), and *State v. Graham*, No. E2013–00204–CCA–RM–CD, 2013 WL 6199276, at

*5 (Tenn.Crim.App. Nov. 27, 2013) ("Because judicial diversion is not a sentencing alternative, *Bise* and *Caudle* do not affect our previous decision regarding judicial diversion....") (citing Tenn.Code Ann. § 40–35–104(c)(1)–(9) (2010)). In light of this split within our Court of Criminal Appeals, we find it necessary to explain why and how the *Bise* standard of review applies to judicial diversion decisions.

■ Initially, we recognize that the conditional probationary period incident to the grant of judicial diversion does not qualify as a sentence per se. *Turco*, 108 S.W.3d at 248 (rejecting that judicial diversion is a sentence for purposes of the Tennessee Rules of Criminal Procedure); *State v. Messer*, No. E2013–00647–CCA–R3–CD, 2014 WL 259706, at *3 (Tenn.Crim.App. Jan. 22, 2014) ("Judicial diversion, is not now, and never has been, a sentence...."); *State v. Patel*, No. M2012–02130–CCA–R3–CD, 2013 WL 3486944, at *8 (July 10, 2013) (Witt, J., concurring) ("Our case law is clear that a judicial diversion term is not a sentence under the terms of the Sentencing Act."). Nevertheless, *Bise* and its progeny establish that the abuse of discretion standard of appellate review accompanied by a presumption of reasonableness applies to all sentencing decisions. *Pollard*, 2013 WL 6732667, at *11 ("The abuse of discretion standard, accompanied by a presumption of reasonableness, is the appropriate standard of appellate review for *all sentencing decisions*." (emphasis added)); *Caudle*, 388 S.W.3d at 278 (observing that the abuse of discretion standard accompanied by a presumption of reasonableness applies to " '*sentencing decisions* that reflect a proper application of the purposes and principles of our Sentencing Act' " (emphasis added) (quoting *Bise*, 380 S.W.3d at 707)). The grant or denial of judicial diversion is a *decision* to either defer or impose a

sentence. Thus, our holdings in *Bise, Caudle,* and *Pollard* set forth the appropriate standard of appellate review for a trial court's sentencing decision to either grant or deny judicial diversion, and all decisions of the Court of Criminal Appeals declining to extend the *Bise* standard of review to judicial diversion are, therefore, overruled. *See, e.g., Rutherford,* 2013 WL 6254675, at *6 n. 3; *Graham,* 2013 WL 6199276, at *5.

This does not end our analysis, however, because the Court of Criminal Appeals in this instance ruled that the *Bise* standard not only applies to judicial diversion, but also that, in order to comply with *Bise* and *Caudle,* the appellate courts can no longer require trial courts to follow the "stringent procedural requirements" imposed by *Parker* and *Electroplating. King,* 2013 WL 793588, at *7. Moreover, although the Court of Criminal Appeals noted that "the record in this case is scant on the issue of judicial diversion," *id.,* it nevertheless "start[ed] with the presumption that the trial court's decision to deny judicial diversion was reasonable," *id.* at *8. We disagree with each of these conclusions.

In determining that our ruling in *Bise* effectively abrogated *Parker* and *Electroplating,* the Court of Criminal Appeals compared the common law factors set forth in those cases to the statutory enhancement and mitigating factors at issue in *Bise. Id.* at *6. The court held that

> [m]istakes—even ones that in the past would have been deemed serious mistakes meriting reversal, such as the complete misapplication of an enhancement or mitigating factor—no longer serve to invalidate a defendant's in-range sentence so long as the trial court did not wholly depart from [the] principles and purposes of the Sentencing Act.

*Id.* (citing *Bise,* 380 S.W.3d at 706). The Court of Criminal Appeals then concluded

that "[t]he stringent procedural requirements governing the judicial diversion process that we imposed on trial courts in *Parker* and *Electroplating* directly conflict with our duty, imposed by *Bise* and *Caudle, to treat all in-range sentences imposed by trial courts as presumptively reasonable." Id.* at *7 (emphasis added). We did not, however, in *Bise, Caudle,* or *Pollard,* require that the presumption of reasonableness be applied to *all* within-range sentences.

Our opinion in *Pollard* offers guidance in these circumstances. Pollard was convicted of felony murder, first degree premeditated murder, and especially aggravated robbery. *Pollard,* 2013 WL 6732667, at *3. The trial court, which imposed a life sentence for the murder and eighteen years for the aggravated robbery, ordered the sentences to be served consecutively based upon Pollard's classification as a "dangerous offender." *Id.* (citing Tenn.Code Ann. § 40–35–115(b)(4) (2006)). The Court of Criminal Appeals affirmed the length of the sentences but remanded for reconsideration on the issue of consecutive sentencing because the trial court had failed to address the underlying factors essential for the dangerous offender classification, as set forth in *State v. Wilkerson,* 905 S.W.2d 933 (Tenn.1995). *Pollard,* 2013 WL 6732667, at *3.

While adopting the same standard of appellate review as set out in *Bise* and *Caudle,* this Court upheld the principles set out in *Wilkerson,* observing that the presumption of reasonableness provides "deference to the trial court's exercise of its discretionary authority to impose consecutive sentences [only] if it has provided reasons on the record establishing at least one of the seven grounds listed [in the consecutive sentencing statute]." *Id.* at *9. We specifically held that when consecutive sentencing is based upon the danger-

ous offender classification, "the record must also establish [ (1) ] that the aggregate sentence reasonably relates to the severity of the offenses and [ (2) ] that the total sentence is necessary for the protection of the public from further crimes by the defendant"—the two factors set forth in the *Wilkerson* decision. *Id.* at *11. Thus, when the record does not include a proper statutory basis for the imposition of consecutive sentences, including consideration of the *Wilkerson* factors when imposing consecutive sentences based upon the dangerous offender classification, "the appellate court should neither presume that the consecutive sentences are reasonable nor defer to the trial court's exercise of its discretionary authority." *Id.* In these instances, we determined that the appellate court may either conduct a de novo review or remand the issue to the trial court for reconsideration. *Id.* Because of the fact-intensive nature of the inquiry in that case and the dearth of information in the record, we remanded the case to the trial court for reconsideration. *Id.*

Similarly, Tennessee Code Annotated section 40–35–313(a)(1)(A) requires an initial determination that a defendant is "qualified" for judicial diversion. As stated, a "qualified" defendant is not necessarily entitled to diversion. Whether to grant judicial diversion is left to the discretionary authority of the trial courts. After a defendant is deemed "qualified," but prior to the grant or denial of judicial diversion, trial courts shall consider

(a) the accused's amenability to correction, (b) the circumstances of the offense, (c) the accused's criminal record, (d) the accused's social history, (e) the accused's physical and mental health, and (f) the deterrence value to the accused as well as others. The trial court should also consider whether judicial diversion will serve the ends of justice—

the interests of the public as well as the accused.

*Parker*, 932 S.W.2d at 958 (footnote omitted). Further, the trial court must weigh the factors against each other and place an explanation of its ruling on the record. *Electroplating*, 990 S.W.2d at 229. *Bise*, *Caudle*, and *Pollard* did not abrogate the requirements set forth in *Parker* and *Electroplating*, which are essential considerations for judicial diversion.

In summary, the underlying purpose of the requirement that trial courts address all of the *Parker* and *Electroplating* factors on the record is compatible with our rulings in *Bise*, *Caudle*, and *Pollard*, consistent with the purposes and principles of sentencing, and in accord with providing meaningful appellate review. To be clear, although we hold that the *Bise* standard of review does apply to judicial diversion decisions, nothing in *Bise* or its progeny requires the abrogation of the *Parker* and *Electroplating* factors.

Despite its erroneous abrogation of the *Parker* and *Electroplating* factors, the Court of Criminal Appeals correctly recognized that the standard announced in *Parker* for determining whether a trial court has abused its discretion in granting or denying judicial diversion—whether there is "any substantial evidence" to support the decision of the trial court—remains intact after *Bise*. *King*, 2013 WL 793588, at *7. Prior to applying this standard in the context of judicial diversion, our courts utilized this standard in pretrial diversion cases. *See State v. Watkins*, 607 S.W.2d 486, 488 (Tenn.Crim.App.1980). In *State v. Curry*, this Court explained that a decision to deny pretrial diversion should be upheld absent an abuse of discretion,

*but only if all of the relevant factors have been considered as well.* The facts and circumstances of nearly all criminal offenses are by definition serious; only

by analyzing all of the relevant factors, including those favorable to the defendant, can appropriate candidates for this legislative largess be identified in a manner consistent with the purpose of the pretrial diversion act.

988 S.W.2d 153, 158 (Tenn.1999) (citation omitted). This Court held that the denial of pretrial diversion "must be in writing and must include 'an enumeration of the evidence that was considered and a discussion of the factors considered and weight accorded each,'" *id.* at 157 (quoting *State v. Pinkham,* 955 S.W.2d 956, 960 (Tenn. 1997)), and that the ultimate decision is "presumptively correct, . . . subject to review by the trial court only for an abuse of discretion," *id.* at 158 (defining an abuse of discretion as "an absence of any substantial evidence to support the refusal").

In *State v. Anderson,* the Court of Criminal Appeals first used the phrase "substantial evidence" in the context of judicial diversion, reasoning that judicial diversion "is to be imposed within the discretion of the trial court subject only to the *same constraints* applicable to prosecutors in applying pretrial diversion." 857 S.W.2d at 572 (emphasis added). It is not by coincidence, therefore, that the "relevant factors" for pretrial diversion decisions are identical to those identified by our Court of Criminal Appeals in *Parker* and *Electroplating. See State v. Cutshaw,* 967 S.W.2d 332, 343 (Tenn.Crim.App.1997) ("Tennessee courts have recognized the similarities between judicial diversion and pretrial diversion and, thus, have drawn heavily from the case law governing pretrial diversion to analyze cases involving judicial diversion."). The point illustrated by these cases is that even though an abuse of discretion standard of review is appropri-

ate for a trial court's judicial diversion decision, the trial court must consider and discuss each of the *Parker* and *Electroplating* factors on the record before the appellate court can determine whether "any substantial evidence" exists to support the decision. This framework comports with our ruling in *Bise.*

■ Under the *Bise* standard of review, when the trial court considers the *Parker* and *Electroplating* factors, specifically identifies the relevant factors, and places on the record its reasons for granting or denying judicial diversion, the appellate court must apply a presumption of reasonableness and uphold the grant or denial so long as there is any substantial evidence to support the trial court's decision.[8] Although the trial court is not required to recite all of the *Parker* and *Electroplating* factors when justifying its decision on the record in order to obtain the presumption of reasonableness, the record should reflect that the trial court considered the *Parker* and *Electroplating* factors in rendering its decision and that it identified the specific factors applicable to the case before it. Thereafter, the trial court may proceed to solely address the relevant factors.

■ If, however, the trial court fails to consider and weigh the applicable common law factors, the presumption of reasonableness does not apply and the abuse of discretion standard, which merely looks for "any substantial evidence" to support the trial court's decision, is not appropriate. See *Pollard,* 2013 WL 6732667, at *11 ("Where, as here, the trial court fails to provide adequate reasons on the record for imposing consecutive sentences, the appellate court should *neither presume that*

---

**8.** The trial court, however, is not required to utilize any "magic words" or specifically reference the case names *"Parker"* and *"Electro-* *plating"* when discussing the relevant factors in order to receive the presumption of reasonableness.

*the ... sentences are reasonable nor defer to the trial court's exercise of its discretionary authority."* (emphasis added)); *see also Messer,* 2014 WL 259706, at *3 n. 3 ("If ... *Pollard* has any application to [judicial diversion], it would be to express that traditional notions of parameters, guidelines, or factors apply to inform and review discretionary decisions. For purposes of judicial diversion, those parameters, guidelines, and factors are embodied in existing caselaw...."). In those instances, the appellate courts may either conduct a de novo review or, if more appropriate under the circumstances, remand the issue for reconsideration. The determination as to whether the appellate court should conduct a de novo review or remand for reconsideration is within the discretion of the reviewing court. Relevant considerations include the adequacy of the record, the fact-intensive nature of the inquiry, and the ability of the court to request supplementation of the record. *See Pollard,* 2013 WL 6732667, at *11 (remanding based on the fact-intensive nature of the inquiry); *Bise,* 380 S.W.3d at 705 n. 41 (recognizing that remanding for reconsideration is more appropriate when the trial court fails altogether to articulate the reasons for its sentencing decision); *Caudle,* 388 S.W.3d at 279–80 (conducting a de novo review after requesting a supplementation of the record); *see also Electroplating,* 990 S.W.2d at 229–30 (conducting a de novo review when the trial court failed to provide an adequate explanation for denying the request for judicial diversion).

The trial court failed in this instance to place an adequate explanation on the record for the denial of judicial diversion. Because, however, the record is sufficient for de novo review, we have chosen to address whether the denial of judicial diversion was appropriate in these circumstances, rather than remand the case for reconsideration by the trial court.

Initially, it is undisputed that the Defendant is "qualified" for judicial diversion under Tennessee Code Annotated section 40–35–313(a)(1)(B)(i) *(a)-(c)*. Further, the Defendant has no criminal or juvenile record.[9] Tardy attendance is the only disciplinary infraction she committed while in high school. In addition, the Defendant has established a good social history, including volunteering in the community and obtaining gainful employment. She also has the benefit of two parents who testified that they would assist her in satisfying the terms of any probationary period. Thus, these factors—the defendant's criminal record and the defendant's social history—weigh in favor of judicial diversion. With respect to the factor concerning the defendant's physical and mental health, the record reflects nothing remarkable and is, in consequence, neutral as to the judicial diversion determination.

On the other hand, the record clearly demonstrates that the other factors weigh against judicial diversion. First, despite the fact that the Defendant remained in the vehicle during the commission of the burglary, there was evidence that she knew of her co-defendants' intentions to use her vehicle for transportation to and from the place of the burglary. Second, a firearm was employed during the commission of the crime. Third, the trial court expressed concern that judicial diversion would depreciate the seriousness of the offense, especially in consideration of the use of a firearm. Fourth, the Defendant's amenability to correction is called into

9. As previously indicated, in one of her statements to Detective Oliver, the Defendant apparently admitted that she was the driver in another uncharged burglary committed with the same adult co-defendants.

question by her failure to contact law enforcement in Marshall County after she was informed that they were looking for her and, after being apprehended, she made inconsistent statements. Fifth, her efforts to claim ignorance of her co-defendants' plan suggests an unwillingness to accept responsibility for her misdeeds. Under the totality of the circumstances, the ends of justice would not be served by granting judicial diversion to this Defendant. So, even though the trial court did not adequately address the relevant factors when denying judicial diversion, the record supports the denial.

### III.   Conclusion

In summary, the abuse of discretion standard accompanied by a presumption of reasonableness applies to all sentencing decisions, including the grant or denial of judicial diversion, when the trial court properly supports its decision on the record in accordance with the purposes and principles of sentencing. Further, the trial court must consider and weigh the factors set forth in *Parker* and *Electroplating* prior to granting or denying judicial diversion, and must place the justification for its determination on the record. Despite the trial court's failure to do so in this instance, our de novo review of the record demonstrates that the trial court properly denied judicial diversion to the Defendant. The judgment of the Court of Criminal Appeals is, therefore, affirmed. It appearing that the Defendant is indigent, costs of this appeal are taxed to the State of Tennessee.