IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE

Assigned on Briefs January 24, 2018

**STATE OF TENNESSEE v. DAVID WAYNE CUPP, ALIAS**

**Appeal from the Criminal Court for Knox County**
**No. 109716   Steven W. Sword, Judge**

**No. E2017-00790-CCA-R3-CD**

The Defendant, David Wayne Cupp, alias, appeals as of right from the Knox County Criminal Court's denial of his request for judicial diversion. On appeal, the Defendant contends that the trial court abused its discretion by overvaluing "the circumstances of the offense[s] to the exclusion of the factors supporting diversion." Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

Mark E. Stephens, District Public Defender; Bridget Candace McCullough (at trial); and Jonathan Harwell (on appeal), Assistant District Public Defenders, for the appellant, David Wayne Cupp, alias.

Herbert H. Slatery III, Attorney General and Reporter; Clark B. Thornton, Senior Counsel; Charme P. Allen, District Attorney General; and Willie Rena Lane, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTUAL BACKGROUND**

On January 19, 2017, the Defendant pled guilty to aggravated burglary and aggravated assault. See Tenn. Code Ann. §§ 39-13-102, -14-403. The plea agreement included an agreed-upon sentence of five years as a Range I, standard offender, with the manner of service to be determined by the trial court. Following a sentencing hearing,

the trial court denied the Defendant's request for judicial diversion. However, the trial court suspended the Defendant's sentence, placing him on enhanced supervised probation.

The State provided the following factual basis for the Defendant's guilty pleas: on October 5, 2016, the Defendant's then-wife, Julia Burke, "was with a family friend," Michael Melton, who had taken her to visit her father's grave. When they returned to Mr. Melton's residence, the Defendant "came up [on Mr. Melton and Ms. Burke] in his vehicle." The Defendant got out of his car with a handgun. "An argument ensued," and the Defendant held the gun "to Mr. Melton's chest." All of this occurred in front of Mr. Melton's fifteen-year-old son.

The following morning, October 6, 2016, the Knox County Sheriff's Department was called to Ms. Burke's residence. When officers arrived, Ms. Burke told officers that she had been sleeping when the Defendant entered her home through the back door, dressed in a skeleton costume. Once inside, the Defendant immediately began to throw around household items and flipped over the chair that Ms. Burke had been seated in. She was able to call the police, and he ran out the door. Furthermore, Ms. Burke told the officers that the Defendant had at one point placed one of his hands over her mouth in a threatening manner.

At the sentencing hearing, the Defendant's counsel argued the following:

[The Defendant] has been in custody for a significant amount of time for somebody that has never been in custody before. He was taken in in October, and we're now in April. So he's looking at about six months. In that six-month period, your Honor, he successfully completed the Focus Ministry Program at the jail. He took on leadership roles within that program. He has a letter of recommendation from Gary Burleson, who teaches the Jobs for Life class, and he also completed the Inside Recovery Program while also in the Focus Program. So he's taken significant steps while he's been in custody….Additionally, Judge, [the Defendant] has the support of his family. [The Defendant's] grandmother, Anna Lee Cupp, is here this morning….And [the Defendant's] brother is also here to support him.

. . . .

[T]o address [The Defendant's] physical/mental health and his substance abuse, he's physically healthy and he's able to work. He has experience in welding. He's able to support himself and also to fulfill those obligations to the court if he's placed on probation and judicial diversion.

. . . .

[The Defendant's] taken steps toward recovery and living a sober and law-abiding lifestyle. He can do that. As I said, Judge, [the Defendant] has been accepted into the Focus halfway house, where he—they can provide him with the continued support that he needs to stay sober and live a law-abiding life. He's prepared to do so, Judge, if you give him that opportunity, and the opportunity to do so on judicial diversion.

The Defendant provided the following allocution:

I would like to say that since my time of being incarcerated, I have had a great renewing of my mind. I've been away from the drugs for six months, and before I couldn't tell, but now I'm highly ashamed of my actions. I have so many things in my heart that I want to do, I vow to do all the good things that I've only dreamed of before, and I ask that you please give me judicial diversion.

In determining the manner of service, the trial court stated as follows:

There's certain factors the court has to consider. One is the [D]efendant's amenability to correction. [The] court does find that [the Defendant] is amenable to correction. He's shown that since he's been in custody that he's willing to take steps to try to address his underlying issues, most notably his substance abuse issues which always a component of that is mental health issues, and [the] court does find that he is remorseful, and so all that weighs in favor of diversion.

The circumstances of the offense are very serious, particularly count No. 2 on the aggravated assault. Not to minimize the aggravated burglary, but count No. 2 involved the use of a deadly weapon, pointing it at a completely innocent person which was traumatizing not only [to] that person but to his family as well too. I think the circumstances of the offense, even though it is a C felony, weigh against diversion.

His criminal history is clean. That weighs in favor of diversion, which you know, he wouldn't be eligible for it if he did have a prior A misdemeanor or higher.

His social history, there doesn't appear to be anything in there that is concerning to the court that would weigh against diversion. Ms. McCullough points out that he's physically able to work. Generally, that's a good sign that they can get a job and be productive citizens.

-3-

The deterrence value to others, sort of a mixed bag in this. These are both C felonies. It's the top of the—top of the fence that you can actually get diversion for, but you do—it is something that you can get a diversion for. Whether or not you give somebody diversion on burglary, in my mind, is different than aggravated assault. Aggravated assault, when you're using a deadly weapon, we've had such a bad history lately in Knox County with the use of weapons taking people's lives that, to me, granting diversion does not have deterrent value for those offenses, and the big question is would the interest of justice be served to the public as well as to the [D]efendant by granting diversion?

If it had just been aggravated burglary that happened on the 6th, which again, I don't mean to make light of that or say it's not as serious, but the fact that we had these two right around the same time events dealing with his I guess ex-wife now and the first one involving a gun, I just don't think the interest of justice can be served under these circumstances.

So, [Defendant], I'm going to deny your request for diversion. However, for the same things I just pointed out that weigh in favor of diversion, I think you are a good candidate for probation.

The Defendant filed a timely notice of appeal from the trial court's order. This matter is before this court on appeal as of right.

## ANALYSIS

The Defendant contends that the trial court abused its discretion in denying judicial diversion. The Defendant argues that the trial court overvalued "the circumstances of the offense[s] to the exclusion of the factors supporting diversion." The Defendant also argues that there was no evidence to support the trial court's findings on the deterrent effect of denying diversion. The State responds that the trial court did not abuse its discretion.

A defendant who is qualified for judicial diversion means a defendant who:

(a) is found guilty of or pleads guilty or nolo contendere to the offense for which deferral of further proceedings is sought; (b) is not seeking deferral of further proceedings for any offense committed by any elected or appointed person in the executive, legislative or judicial branch of the state or any political subdivision of the state, which offense was committed in the person's official capacity or involved the duties of the person's office;

(c) is not seeking deferral of further proceedings for a sexual offense, a violation of Tennessee Code Annotated § 71-6-117, or Tennessee Code Annotated § 71-6-119, driving under the influence of an intoxicant as prohibited by Tennessee Code Annotated § 55-10-401, vehicular assault under Tennessee Code Annotated § 39-13-106 prior to service of the minimum sentence required by Tennessee Code Annotated § 39-13-106, or a Class A or Class B felony; (d) has not previously been convicted of a felony or a Class A misdemeanor; and (e) has not previously been granted judicial diversion under this chapter or pretrial diversion.

Tenn. Code Ann. § 40-35-313(a)(1)(B)(i). However, simply because a defendant meets the eligibility requirements does not automatically entitle him or her to judicial diversion. State v. Bonestal, 871 S.W.2d 163, 168 (Tenn. Crim. App. 1993). "Traditionally, the grant or denial of judicial diversion has been left to the sound discretion of the trial court." State v. King, 432 S.W.3d 316, 323 (Tenn. 2014). When deciding whether judicial diversion is appropriate, a sentencing court must consider seven common-law factors in making its determination. Those factors are:

(a) the accused's amenability to correction, (b) the circumstances of the offense, (c) the accused's criminal record, (d) the accused's social history, (e) the accused's physical and mental health, and (f) the deterrence value to the accused as well as to others. The trial court should also consider whether judicial diversion will serve the ends of justice—the interests of the public as well as the accused.

Id. at 326. The trial court must weigh the factors against each other and explain its ruling on the record. Id. (citing State v. Electroplating, 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998). If the trial court adhered to these requirements, "the determination should be given a presumption of reasonableness on appeal and reviewed for an abuse of discretion." Id. at 319. This court will "not revisit the issue if the record contain[ed] any substantial evidence supporting the trial court's decision." Electroplating, 990 S.W.2d at 229.

Here, the trial court considered all of the factors in making its decision and explained its ruling on the record. Therefore, our review is limited to whether the trial court abused its discretion.

The trial court held that the circumstances of the aggravated assault were very serious as it involved the use of a deadly weapon. The court emphasized that this was not just traumatizing to Mr. Melton, but also to his family. The trial court also emphasized the need for deterrence and in its analysis remarked on the increase of gun homicides in Knox County. While the trial court's statement about the increase of gun homicides in

-5-

Knox County was not supported by any proof in the record, the deterrence value to others was a proper factor for the trial court to consider and rely on. There was substantial evidence in the record to support the trial court's denial of judicial diversion based upon the seriousness of the circumstances of the offenses. Therefore, we conclude that the trial court did not abuse its discretion in denying judicial diversion.

## CONCLUSION

Upon consideration of the foregoing and the record as a whole, the judgments of the trial court are affirmed.

_____
D. KELLY THOMAS, JR., JUDGE