FILED

04/22/2025

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
March 18, 2025 Session

## STATE OF TENNESSEE v. MARIO ALBANESE

**Appeal from the Criminal Court for Hawkins County**
**No. 21-CR-52      Alex E. Pearson, Judge**

_____

### No. E2024-00744-CCA-R3-CD

_____

The Defendant, Mario Albanese, pleaded guilty to three counts of reckless aggravated assault, a Class D felony. *See* T.C.A. § 39-13-102(a)(1)(B) (2014) (subsequently amended). The Hawkins County Criminal Court sentenced him to an agreed-upon, nine-year sentence, suspended to probation. On appeal, he contends that the trial court erred in denying judicial diversion. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and JILL BARTEE AYERS, JJ., joined.

Catalina L.C. Goodwin (on appeal) and Stephen R. Johnson (at plea and sentencing hearing), Knoxville, Tennessee, for the Appellant, Mario Albanese.

Jonathan Skrmetti, Attorney General and Reporter; Johnny Cerisano, Assistant Attorney General; Dan E. Armstrong, District Attorney General; and Joanie Stewart, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The Defendant's convictions relate to his conduct in 2014 when he touched his then-two-year-old daughter's vagina. The victim reported the assault six years later. The Defendant contended that the victim asked him to touch her vagina to help her go to sleep and that it was not for sexual gratification. The Defendant was charged with aggravated sexual battery. As part of a plea agreement, the State dismissed the aggravated sexual battery charge, and the Defendant pleaded guilty to three counts of reckless aggravated

assault. The parties agreed to an effective nine-year probationary sentence, with the trial court to determine whether to grant judicial diversion.

At the guilty plea hearing, the Defendant testified that he was age fifty-one and that he understood he was voluntarily waiving his right to a jury trial, entering into a negotiated plea agreement for three Class D felonies, and requesting judicial diversion. The Defendant also agreed as a special condition of his probation that he would not have in-person contact with the victim or her brother. The parties agreed to proceed without a full presentence report. *See* T.C.A. §§ 40-35-205(a); -203(b).

The Defendant filed a sentencing memorandum. According to the memorandum, the Defendant had no criminal history, had done well on pretrial release, and supported his family financially. The Defendant lived with his aunt and worked remotely providing customer service and employee training for an insurance company. The Defendant was raised by a single mother, completed high school, and completed classes at a community college. From 2005-2008, the Defendant suffered from a seizure disorder, precluding employment. The Defendant had a history of depression, anxiety, insomnia, and cyclothymic disorder. A forensic psychologist reported that the Defendant had characteristics for high-functioning autism and raised concerns regarding the accuracy of the victim's recollection of the assault. The psychosexual risk assessment report concluded that the Defendant presented a below-normal risk to sexually offend and did not recommend sex offender treatment. The Defendant submitted a letter expressing remorse for his actions and said that he likely would lose his job if convicted of a felony. The memorandum also included statistical information for Class D felony offenders and several letters in support of judicial diversion, including a letter from the victim's mother.

The Defendant filed a mitigating factors notice and argued that the circumstances of the offense made it unlikely that a sustained intent to violate the law motivated the criminal conduct; he had no criminal history; he was doing well in his current position at work; his guilty plea conserved judicial and state resources and avoided the need for the victim's testimony; his background made him likely to succeed on probation and judicial diversion; he financially supported his children and his children's mother; he had a difficult childhood and was raised by a single mother; his mental health conditions reduced his culpability; and he demonstrated remorse.

At the sentencing hearing, the trial court acknowledged that it had received the sentencing memorandum and the criminal history report. Defense counsel stated that the allegations for which the Defendant pleaded guilty were that "when his daughter . . . was two years old, at her request, [the Defendant] touched her vaginal area in order to help her go to sleep." Defense counsel noted that the Defendant had significant mental health issues and had agreed not to have any in-person contact with his children during his sentence. Defense counsel explained that at the end of the nine-year sentence, the

-2-

Defendant's children would be adults. The State agreed that the "mental health component was substantial" and stated that it was significant the victim's mother felt diversion was in the best interest of her family. The State did not take a position regarding diversion.

The trial court addressed the *Parker* and *Electroplating* factors. *See State v. Electroplating*, 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998); *State v. Parker*, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996). The court found the Defendant amenable to correction, a factor that it weighed slightly in favor of judicial diversion. The court considered that the conduct was not "an ongoing situation" and that the psychosexual evaluation concluded that the Defendant presented a below-normal risk to sexually offend. The court found the circumstances of the offense weighed against granting judicial diversion because the Defendant should "know better" than to rub a two-year-old's vagina to help her sleep. Further, the court noted that the incident was significant enough in the victim's mind that she disclosed it six years later and that the Defendant admitted to the conduct. The court questioned whether the conduct was, in fact, for sexual gratification.

The trial court considered the Defendant's lack of criminal history to be "an important consideration" that weighed in favor of judicial diversion. The court did not find any negative social history and noted that the Defendant had been providing financial support to his children. The court considered this factor to weigh slightly in favor of judicial diversion. The court considered the Defendant to be in good physical health. The court noted that the Defendant's mental health concerns did not preclude him from employment. Although the Defendant argued that his mental health issues were a mitigating factor, the court considered the Defendant's physical and mental health to be a neutral factor for judicial diversion.

Regarding the deterrence value to the Defendant and others, the trial court stated that the Defendant needed to be "deterred from engaging in this type [of] activity," although the record contains no evidence of other allegations of sexual assault. The trial judge noted that he did not think "we need to send a message that you can inappropriately touch minor children and that's okay." The judge also noted his prior work as a prosecutor and the need to deter child sexual abuse. The court found the deterrence factor to weigh against granting judicial diversion.

The trial court found that the Defendant accepted responsibility for his conduct and then considered whether judicial diversion would serve the interests of the public and the accused. The court found this factor was favorable to the accused. However, the court concluded that, despite the favorable arguments made by defense counsel, "the bottom line is I don't think people who have engaged in this conduct, I don't think that it serves the interest of the public for those individuals to be granted judicial diversion."

-3-

The trial court stated that it considered the sentencing memorandum and its attachments. The court concluded that the *Parker* and *Electroplating* factors supported a probationary sentence but not judicial diversion. Defense counsel asked the court to hear the Defendant's allocution statement and then reconsider its ruling. The court granted the Defendant's motion to reconsider, allowed the Defendant to allocute, and denied judicial diversion. This appeal followed.

On appeal, the Defendant contends that (1) no presumption of reasonableness should apply to the trial court's denial of judicial diversion because it inadequately weighed the judicial diversion factors and wrongly relied on extrajudicial observations; (2) the court erred by failing to weigh the mitigating factors and relevant statistical information as required by statute; (3) the Defendant was deprived of his right to allocute; and (4) the Defendant was denied due process. The State argues that the court properly weighed the required factors, allowed the Defendant to allocute, did not infringe upon the Defendant's due process rights, and did not abuse its discretion in denying judicial diversion. We agree with the State.

A trial court may order judicial diversion for certain qualified defendants who are found guilty of or plead guilty or nolo contendere to a Class C, D, or E felony or a lesser crime; have not previously been convicted of a felony or a Class A misdemeanor; and are not seeking deferral for a sexual offense. *See* T.C.A. § 40-35-313(a)(1)(B)(i) (2014) (subsequently amended). The grant or denial of judicial diversion is within the discretion of the trial court. *State v. King*, 432 S.W.3d 316, 323 (Tenn. 2014) (citing T.C.A. § 40-35-313(a)(1)(A)). When considering whether to grant judicial diversion, a trial court must consider (1) the defendant's amenability to correction, (2) the circumstances of the offense, (3) the defendant's criminal record, (4) the defendant's social history, (5) the defendant's physical and mental health, (6) the deterrence value to the defendant and others, and (7) whether judicial diversion will serve the ends of justice and the interests of the public and the defendant. *Electroplating*, 990 S.W.2d at 229; *Parker*, 932 S.W.2d at 958; *see King*, 432 S.W.3d at 326 (stating that recent caselaw affecting the standard of review for sentencing determinations "did not abrogate the requirements set forth in *Parker* and *Electroplating*, which are essential considerations for judicial diversion"). "The record must reflect that the court has weighed all of the factors in reaching its determination." *Electroplating*, 990 S.W.2d at 229. If a trial court refuses to grant judicial diversion, "the court should clearly articulate and place in the record the specific reasons for its determinations." *Parker*, 932 S.W.2d at 958-59.

On review of a decision to grant or deny judicial diversion, this court will apply a presumption of reasonableness if the record reflects that the trial court considered the *Parker* and *Electroplating* factors, specifically identified the relevant factors, and placed on the record the reasons for granting or denying judicial diversion, provided any

substantial evidence exists to support the court's decision. *King*, 432 S.W.3d at 327. If, however, the trial court failed to weigh and consider the relevant factors, this court may conduct a de novo review or remand the case for reconsideration. *Id.* at 328.

Likewise, a trial court's reliance upon an irrelevant factor may result in an abuse of discretion. *See State v. McKim*, 215 S.W.3d 781, 787 (Tenn. 2007). However, a court's mere consideration of an irrelevant factor does not result in an abuse of discretion because "it is the undue consideration of an irrelevant factor that is prohibited." *Stanton v. State*, 395 S.W.3d 676, 687 n.2, 691 (Tenn. 2013). A "trial court is not required to recite on the record all of the . . . factors; however, the record should reflect that the trial court considered all of the factors in rendering its decision and that it 'identified the specific factors applicable to the case before it.'" *State v. Dycus*, 456 S.W.3d 918, 930 (Tenn. 2015) (quoting *King*, 432 S.W.3d at 327).

In the present case, the trial court considered each of the *Parker* and *Electroplating* factors in turn, identified the ones to which it afforded greater weight, and explained its reasoning for denying diversion. We afford the court's determination a presumption of reasonableness. *See King*, 432 S.W.3d at 327.

The Defendant contends that the trial court erred by finding that the Defendant's mental health was a neutral factor in the judicial diversion analysis. The court acknowledged that it considered the sentencing memorandum, which included a detailed forensic psychologist's account of the Defendant's mental health history and a psychosexual evaluation. The court explained that because the Defendant was able to work and provide for his family, this factor was neutral. A defendant's mental health condition "may weigh neutrally where no physical or mental health condition prevents the defendant from complying with probation conditions." *State v. Gavin Tyler Sheets*, No. M2022-00538-CCA-R3-CD, 2023 WL 2908652, at *11 (Tenn. Crim App. April 12, 2023) (citing *State v. Dylan Ward Hutchins*, No. E2016-00187-CCA-R3-CD, 2016 WL 7378803, at *5 (Tenn. Crim. App. Dec. 20, 2016)). The Defendant has not overcome the presumption of reasonableness afforded to the court's weighing of this factor.

The Defendant contends that the trial court erred by improperly considering the interests of the Defendant and the public. The court found that it was in the Defendant's interest to grant judicial diversion but that the public's interest "ties in with deterrence" because the court did not want to "send[] a message to society that it's okay to engage in this type of behavior with minor children." Although the court acknowledged an overlap between this factor and the factor relating to deterrence, the court gave specific consideration as to how the weight it afforded to this factor served the public interest. The Defendant has not overcome the presumption of reasonableness afforded to the court's weighing of this factor.

The Defendant contends that the trial court erred by considering that the Defendant should have been charged with an "offense different or greater than that for which the defendant was indicted." According to the Defendant, the court "discredited the stipulations by the parties and repeatedly referred back to its disbelief that [the Defendant] acted without intending sexual gratification" thereby considering the Defendant guilty of a sexual offense when he pleaded guilty to three non-sexual offenses. The State points out that "nowhere does the record suggest that the parties agreed that [the] Defendant did not act for purposes of sexual gratification" and that the court may consider the original charge of aggravated sexual battery in making its sentencing decision. *See State v. Arbra Allen Sims, III*, No. M2018-01296-CCA-R3-CD, 2019 WL 1388202, at *6 (Tenn. Crim. App. Mar. 27, 2019) (Where the indictment was amended and the defendant pleaded guilty to lesser-included offenses, the trial court did not abuse its discretion by considering the defendant's originally charged and indicted offenses when deciding to order confinement.); T.C.A. § 39-13-504 (2018). Aggravated sexual battery requires "sexual contact" that can be reasonably construed as touching a victim "for the purpose of sexual arousal or gratification." T.C.A. § 39-13-501(6) (2018). The court considered the agreed guilty plea facts that the Defendant touched his two-year-old daughter's vagina at her request to help her sleep. The court's consideration of these facts is consistent with the court's duty, pursuant to *Parker* and *Electroplating*, to consider the circumstances of the offense.

The Defendant contends that the trial court's determination that the Defendant "needs to be deterred from engaging in this type of activity," was contrary to the evidence. The record reflects that the Defendant admitted to touching his two-year-old daughter's vagina on three occasions. The court's determination that the Defendant should be deterred from inappropriate sexual touching in the future is supported by the record. The Defendant has not overcome the presumption of reasonableness afforded to the court's weighing of this factor.

The Defendant contends that the trial court improperly relied on its past experiences with sexual abuse cases. The court noted, when addressing its concern for the need to deter inappropriate touching of minor children, that it had seen incidents of child sexual abuse on "numerous" occasions both as a judge and as a prosecutor. Although "a judge is not to use from the bench, under the guise of judicial knowledge, that which he knows only as an individual observer outside of the judicial proceedings[,]" *Vaughn v. Shelby Williams of Tennessee, Inc.*, 813 S.W.2d 132, 133 (Tenn. 1991), "[e]ach judge brings to the bench the experiences of life, both personal and *professional*." *State v. Earnest Eugene Travis*, No. 01C01-9706-CC-00215, 1998 WL 391756, at *3 (Tenn. Crim. App. July 15, 1998) (citations omitted) (emphasis in original), *perm. app. denied* (Tenn. Feb. 1, 1999). The court did not abuse its discretion in relying on its own knowledge of the prevalence of child sexual abuse as part of its considerations of the

need for deterrence.  The Defendant has not overcome the presumption of reasonableness afforded to the court's weighing of this factor.

The Defendant contends that the trial court's determination should not be afforded a presumption of reasonableness because the court failed to adequately explain its reasons for granting probation but denying judicial diversion.  Although the same guidelines are generally applicable in judicial diversion and probation cases, the guidelines "are more stringently applied to those seeking diversion." *State v. Bingham*, 910 S.W.2d 448, 456 (Tenn. 1995) (citation omitted), *overruled on other grounds by State v. Hooper,* No. M1997-00031-SC-R11-CD, 2000 WL 1357520, at *6 (Tenn. Crim. App. Sept. 21, 2000). In the present case, the court concluded that judicial diversion was not justified after weighing the appropriate factors.  The decision to grant judicial diversion "is a question which addresses itself to the sound discretion of the trial court." *Id.* (citation omitted). "This court will not interfere with the refusal of the trial court to grant judicial diversion if there is '*any substantial evidence* to support the refusal contained in the record.'" *Id.* (citation omitted) (emphasis in original).

The Defendant contends that the trial court erred by failing to consider mitigating factors and relevant statistical information, citing Tennessee Code Annotated § 40-35-210(b)(6) (2019).  The Defendant contends that the court failed to consider statistical data indicating that he agreed to a probationary term significantly longer than other similarly situated offenders.  The State argues that the Defendant has waived consideration of mitigating factors by failing to raise them at the sentencing hearing and that the court's failure to address relevant statistical information on the record does not overcome the presumption of reasonableness.  The State also notes that the Defendant received an agreed-upon, within-range sentence.

"[W]hen presented with an agreed upon sentence, the trial court's application of enhancing or mitigating sentencing factor language . . . has little legal significance on the question of alternative sentencing." *State v. David Allen Donton, Jr.*, No. E2021-00721-CCA-R3-CD, 2022 WL 3905088, at *5 (Tenn. Crim. App. Aug. 31, 2022).  Likewise, when a defendant's sentence is the result of a plea agreement, a "trial court [is] not obligated to make specific findings on the record regarding enhancement and mitigating factors." *Dexter Johnson v. Howard Carlton, Warden*, No. E2008-02032-CCA-R3-HC, 2010 WL 323126, at *2, (Tenn. Crim. App. Jan. 27, 2010), *perm. app. denied* (Tenn. June 30, 2010).  A "trial court is simply required to 'consider' these [mitigating] factors, not explicitly discuss each one." *State v. Toby Dunn*, No. E2021-00343-CCA-R3-CD, 2022 WL 2433687, at *19 (Tenn. Crim. App. July 5, 2022) (citing T.C.A. § 40-35-114 (2020); *State v. Bise*, 380 S.W.3d 682, 698 n. 33 (Tenn. 2012); *State v. Carter*, 254 S.W.3d 335, 346 (Tenn. 2008)).  "Any omission of the trial court's consideration, or lack thereof, of applicable statistical information does not overcome the presumption of reasonableness afforded the trial court's within-range sentence." *State v. Norman*

*McDowell*, No. W2015-01762-CCA-R3-CD, 2016 WL 4147047, at *5 (Tenn. Crim. App. Aug. 2, 2016) (citation omitted). Furthermore, although a trial court must consider factors consistent with the purposes and principles of sentencing, statistical information is rarely relevant where there is an agreed-upon and knowing plea for a length of sentence. *See* T.C.A. § 40-35-210.

Here, the Defendant's argument for the applicability of mitigating factors and statistical information is unnecessary, as the Defendant was represented by counsel and knowingly entered into the plea agreement with an agreed, within-range length of sentence pursuant to Tennessee Code Annotated Section 40-35-112(a)(4) (establishing a sentencing range for a Class D felony of not less than two nor more than four years). Nonetheless, the trial court heard argument regarding the Defendant's criminal history, employment record, and mental health issues. The court indicated that it had received the Defendant's notice of mitigating factors and sentencing memorandum, which included statistical information. The court addressed the Defendant's employment, financial support of his family, and the circumstances of the offense. The court also heard the Defendant's allocution. The court imposed an agreed-upon and within-range probationary sentence after weighing the *Parker* and *Electroplating* factors and considering factors consistent with the purposes and principles of sentencing. The trial court did not abuse its discretion in denying judicial diversion.

The Defendant contends that he was denied his right to allocute. The State argues that the Defendant was not denied his right to allocute and that, before the sentencing hearing, the trial court had already received the Defendant's written statement which was essentially the same as the Defendant's allocution.

At the sentencing hearing, defense counsel indicated that the Defendant wished to allocute. However, the trial court delivered its denial of judicial diversion determination before hearing the Defendant's allocution. Defense counsel immediately asked the court to hear the Defendant's allocution and then reconsider its decision, and the court agreed. The Defendant read his allocution:

> Your Honor, I am sorry. Sorry to you. Sorry to [the victim's mother]. Sorry to my son [] and most of all [the victim]. I love my family. Being away from my children has been very, very hard. And I know I'm going to have to stay away from them until they're adults. That's nobody's fault but mine. After I was released from jail, I got a good job and started sending [the victim's mother] money, everything I could, and I will continue that as long as I can, just to provide for her and my children. I can't be there to help them. This is the only way I can.

The court commended the Defendant for being financially responsible to his family, indicated that "this is not nor has it been an easy decision," and denied judicial diversion. The record demonstrates that the trial court did not impede the Defendant's right to allocute but gave thoughtful consideration to the Defendant's statement before its final determination to deny judicial diversion. The Defendant is not entitled to relief on this issue.

The Defendant contends that his sentence failed to comport with due process. However, the Defendant points to no specific incident of the denial of due process other than a general claim that the trial court failed to comply with the Sentencing Act. *See* T.C.A. § 40-35-210. "A citizen has the right to due process of law under the Fourteenth Amendment to the United States Constitution and under the 'law of the land' provision of article I, section 8 of the Tennessee Constitution." *State v. Culbreath*, 30 S.W.3d 309, 317 (Tenn. 2000). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Phillips v. State Bd. of Regents*, 863 S.W.2d 45, 50 (Tenn. 1993) (internal citations omitted). The record reflects the court's decision was consistent with the purposes and principles of sentencing, supported by substantial evidence, and afforded a presumption of reasonableness. The Defendant had legal representation, was allowed to allocute after a full and fair hearing, and received a within-range probationary sentence, the length of which was agreed upon. The Defendant is not entitled to relief on this basis.

In consideration of the foregoing and the record as a whole, the judgments of the trial court are affirmed.

**s/ Robert H. Montgomery, Jr.**
ROBERT H. MONTGOMERY, JR., JUDGE