IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

Assigned on Briefs March 18, 2020

## STATE OF TENNESSEE v. PALIKNA TOSIWO TOSIE

**Direct Appeal from the Circuit Court for Montgomery County**
**No. 63CC1-2018-CR-908        William R. Goodman, III, Judge**

_____

### No. M2019-00811-CCA-R3-CD
_____

The Defendant, Palikna Tosiwo Tosie, pleaded guilty to aggravated assault and reckless endangerment, and the trial court sentenced him to an effective sentence of six years to be served on probation. On appeal, the Defendant contends the trial court erred when it denied his request for judicial diversion. After review, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and D. KELLY THOMAS, JR., JJ., joined.

Chase T. Smith, Clarksville, Tennessee, for the appellant, Palikna Tosiwo Tosie.

Herbert H. Slatery III, Attorney General and Reporter; Clark B. Thornton, Senior Assistant Attorney General; John W. Carney, Jr., District Attorney General; and C. Daniel Brollier, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Facts

This case arises from a domestic incident that occurred on June 30, 2018. For this incident, officers arrested the Defendant, and the Montgomery County grand jury indicted him for attempted first degree murder, aggravated assault, and reckless endangerment with a deadly weapon.

The Defendant entered a guilty plea to aggravated assault and reckless endangerment. A transcript of the guilty plea is not included in the record. According to the affidavit of complaint:

Officers with the Clarksville Police Department responded to a domestic [incident that had already occurred]. During a domestic dispute the suspect, [the Defendant] assaulted the victim . . . with a baseball bat. The victim attempted to get away from the [Defendant] by getting in to her vehicle and driving away. The [Defendant] got in to his vehicle and chased after the victim. The [Defendant] is seen on video surveillance ramming the victim's vehicle causing her vehicle to crash in a ditch. The victim is then observed exiting the wreck vehicle and screaming for help. The [Defendant] is then seen getting out of his vehicle with a baseball bat chasing the victim. The victim was found semiconscious in a neighbor's yard with severe trauma to the head and body. The victim was taken to Vanderbilt Hospital by life flight due to the severity of her injuries.

There is a domestic history. The [Defendant] was arrested for a previous domestic assault on 03/27/2018 [sic].

During the course of the investigation, law enforcement sought the victim's medical records from Vanderbilt Hospital. In the application for a subpoena for the medical records, Officer Dominick Sacco swore about the incident that:

[The victim] stated that she was asleep at her residence . . . . when [the Defendant] came home intoxicated. She stated that he began to argue with her and [the Defendant] hit her twice with his fist to her face. [The Defendant] then grabbed a baseball bat and struck her at least once in the thigh. [The victim] was able to get into her vehicle and leave her residence. [The Defendant] got into his vehicle and began to follow her. [The Defendant] rammed the back of [the victim's] vehicle causing her to wreck. [The victim] then got out of the vehicle and attempted to run away. [The Defendant] chased after her with a baseball bat. [The victim] collapsed on the ground . . . [and the Defendant] began to punch and kick her while she was on the ground. [The Defendant] then began to hit her with the baseball bat multiple times in the face and upper body area. [The victim] was knocked unconscious and was taken by Life Flight to Vanderbilt Hospital. [The victim] was placed in a medically induced coma due to her injures. [The victim] had multiple visible injuries to her left thigh, both arms, shoulder, neck, and face area.

The Defendant pleaded guilty to Count 2, aggravated assault, and Count 3, reckless endangerment with a deadly weapon, and agreed to be sentenced as a Range II Offender. As a Range II Offender, the Defendant's applicable sentencing ranges were six to ten years for Count 2, a Class C felony, and two to four years for Count 3, a Class E felony. The parties agreed to allow the trial court to determine the length and manner of service of the Defendant's sentence. In a sentencing memorandum filed with the trial court, the Defendant asked that the trial court grant him judicial diversion, noting that he had served in the military for twenty-seven years, that he could lose retirement benefits, that he had complied with the conditions of his bond, and that he did not have a violent or lengthy criminal history.

At the start of the sentencing hearing, the trial court summarized that the Defendant had pleaded guilty to aggravated assault and reckless endangerment as an "out-of-range" plea. The trial court noted that the Defendant had applied for judicial diversion and that the parties had agreed to allow the trial court to determine the length and manner of service of his sentence.

James Michael Taylor testified that he was a Master Sergeant and combat medic in the United States Army and had been deployed previously with the Defendant in Kuwait. Sergeant Taylor testified that the Defendant was a "tremendous worker" and very reliable. He said that the Defendant had no any disciplinary actions taken against him. Mr. Taylor had full confidence and trust in the Defendant. Sergeant Taylor described the classes, including alcohol rehabilitation, which the Army had required the Defendant to attend as a result of these convictions. He described the Defendant as "remorseful."

Raydon Johnson testified that he was also in the military and in the same unit as the Defendant. Sergeant Johnson, who had known the Defendant for over two years, said that the Defendant handled himself appropriately during the duration of their acquaintance. During cross-examination, Sergeant Johnson said that he had never seen the Defendant lack self-control.

The Defendant testified and stated that he was forty-four years old and on active duty military, serving in the United States Army for more than twenty-six years. The Defendant, who was born on a small island in the Pacific, stated that this incident had brought shame to his family, many of whom had still traveled great distances to be at the sentencing hearing. Describing his educational history, the Defendant stated that he was a high school graduate and also had received an associate's degree from Columbia College. In the army, he had been deployed four times: to Bosnia, Iraq, and twice to Kuwait. Some of those deployments involved combat situations.

The Defendant stated that he and the victim had been married for more than thirteen years and had two children, ages twelve and ten. He described the events surrounding the assault saying that he had consumed "entirely too much" alcohol and "disgraced" himself. He said that he regretted his actions daily. He agreed that he had injured his wife physically and emotionally and agreed that he could have killed her. The Defendant agreed that the two had a negative domestic history. He had been arrested in 2015 in Kansas for domestic violence against her. In 2007, he was arrested for assault of another person, but the altercation stemmed from an argument between the victim and him.

The Defendant testified that he had not had contact with the victim since he had been released on bond after his arrest. The Army moved the victim and their children to a location undisclosed to him. The Army also offered him classes on enhanced parenting skills. The Defendant also filed for divorce in an effort to move forward from this situation and regain some visitation with his children. The Defendant said that the Army also provided him a twenty-eight-week course on domestic abuse treatment.

The Defendant said that he and the victim were from the same small island and same culture. He said that, if she were present at court, he would sincerely apologize because no one deserved what he had done to her.

During cross-examination, the Defendant testified that this incident occurred early in the morning, and he had been drinking all night. He explained that, originally, he thought that he and his wife were going to drink together that evening, but, when he arrived home, she told him to play cards with his friends and "give her space." He felt insulted and disrespected. He said that the two had never had a "smooth" marriage. The Defendant left and played cards. When he returned, he tried to "have his way with her," and she did not reciprocate his affection. The two began arguing, and the victim fled the house and got into her car and drove away. He chased her down and rammed her vehicle. He then got a baseball bat and beat her with it until she was unconscious. A neighbor came outside, and he threatened the neighbor also. The Defendant agreed that he did not exercise self-control and that he failed himself.

The Defendant agreed that he had previously hit the victim. He had been convicted of domestic assault in South Carolina in 2015, and he attended domestic assault classes as a result. This assault did not involve alcohol. He said that he had not consumed alcohol since the most recent domestic assault incident.

During redirect examination, the Defendant testified that he had also completed alcohol and drug abuse classes.

The State offered a victim impact statement. In it, the victim stated that this situation was heartbreaking in that it was a horrifying and terrible thing that happened, which she had to explain to her children. The victim described her injuries saying that she had a cast on her left arm because it was fractured in two places. She said that she was still under the care of an occupational therapist and still did not have the full use of her wrist. The victim stated that she had tried to be strong emotionally and physically for her children but that she was still processing that her "own husband almost took [her] life."

The trial court considered the evidence and then found:

The Court has considered the testimony; . . . the pre-sentence report; the victim impact statement; and the other exhibits certifying the completion of the various courses offered by the United States Army.

First of[] all let me say, I appreciate the service of [the Defendant], as well as the other members of the military, Sergeant Taylor and Sergeant Johnson. Their sacrifices are what enable us to enjoy the benefits of living in a free society. Living in a free society, part of what we enjoy, is the benefit that we have a rule of law that applies, that governs the conduct and the way that people are to act.

This is a situation where there's no way we're going to make it right. Considering the victim impact statement, it's just by the grace of God that we're not here today doing a sentencing for murder.

Now, for the proof, it's pretty much [un]contradicted that after the [victim's] vehicle was run off the road, as a result of the collision, that the Defendant took a baseball bat and further inflicted injuries. And we have had cases in this Court where people got killed by utilization of a baseball bat.

And while recognizing the service and sacrifice of these individuals, from which we receive a benefit, we still have to come back to the point where we can feel secure in society in which we live. That we can feel secure in Montgomery County, Tennessee.

Now, the legislature provides guidance or actually direction as to what is to be considered, and I have considered that.

Under mitigating factors as set forth in Mr. Smith's pre-hearing memorandum, under T.C.A. 40-35-113, the fact that [the Defendant] has entered a plea of guilty to these charges and accepted responsibility for them, I find that to be a mitigating factor.

As it relates to enhancement factors under T.C.A. Section 40-35-114, under Subsection (6); the personal injuries inflicted upon or the amount of damage to property sustained by or taken from the victim was particularly great.

I understand that she has survived. But according to the victim impact statement, she still suffers some degree of disability, as a result of the injuries. I find that to be an enhance[ment] factor.

. . . .

The Court is given further direction under T.C.A. 40-35-102; the Court is directed to consider alternatives, other than incarceration.

And, specifically, under T.C.A. 40-35-103; sentences involving confinement should be based on the following consideration: Confinement is necessary to protect society by restraining the Defendant who has a long history of criminal conduct, and I find that to be applicable; confinement is necessary to avoid depreciating the seriousness of the offense; previous measures less restrictive than confinement have . . . been unsuccessful[].

I do not find that there is anything that prohibits the Defendant from continuing his life. I don't know about what's going to happen with him and the Army.

This is a very serious offense and it's conduct that we simply cannot tolerate in our society. And I do think that Subsection (B); confinement is necessary to avoid depreciating the seriousness of this offense.

Therefore, consideration being given to the enhancement factor, as well as the mitigation factor, I'm going to deny the request for diversion.

. . . .

By agreement as a Range II, . . . as to Count Two, is a sentence of not less than [six], no[r] more than [ten] years. I'm going to sentence him to [six] years on Count Two.

Count Three, a sentence range is Range II, not less than two, no[r] more than four. I sentence [him] to two years in Count Three.

Count Three will run concurrent[ly] with Count Two. This sentence will be suspended, except for 15 days [which he has already served].

It is from that judgment that the Defendant now appeals.

## II. Analysis

On appeal, the Defendant contends that the trial court erred when it denied his request for judicial diversion. He contends that the record does not contain any findings upon which the trial court relied in denying his request. While he concedes that the circumstances of the incident do not weigh in favor of diversion, he asks this court to conduct a *de novo* review or remand the issue for reconsideration. The State counters that the omission of the transcript of the guilty plea hinders the Defendant's assertion but concedes that the record is sufficient for our review. It then posits that, while the Defendant is a favorable candidate in some regards, the circumstances of the offense are so egregious that this factor outweighs all other factors and supports the trial court's denial of judicial diversion. After review, we agree with the State.

"Judicial diversion," provided for in Tennessee Code Annotated section 40-35-313(a), is the trial court's deferring proceedings in a criminal case. *See* T.C.A. § 40-35-313(a)(1)(A) (2019). Although judicial diversion is not a sentence, pursuant to such diversion, the trial court places the defendant on probation "without entering a judgment of guilty." *Id*. To be eligible or "qualified" for judicial diversion, the defendant must plead guilty to, or be found guilty of, an offense that is not "a sexual offense . . . or a Class A or Class B felony," and the defendant must not have previously been convicted of a felony or a Class A misdemeanor. T.C.A. § 40-35-313(a)(1)(B)(i)(a),(c),(d). Diversion requires the consent of the qualified defendant. T.C.A. § 40-35-313(a)(1)(A). "[A] 'qualified' defendant is not necessarily entitled to diversion. Whether to grant judicial diversion is left to the discretionary authority of the trial courts." *State v. King*, 432 S.W.3d 316, 326 (Tenn. 2014). Following a determination that the defendant is eligible for judicial diversion, the trial court must consider:

(a) the accused's amenability to correction, (b) the circumstances of the offense, (c) the accused's criminal record, (d) the accused's social history,

(e) the accused's physical and mental health, and (f) the deterrence value to the accused as well as others. The trial court should also consider whether judicial diversion will serve the ends of justice - the interests of the public as well as the accused.

*Id*. (quoting *State v. Parker*, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996)). "Further, the trial court must weigh the factors against each other and place an explanation of its ruling on the record." *Id.* (citing *State v. Electroplating, Inc.*, 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998)).

Although judicial diversion is not a sentence, our supreme court determined that the standard of review first expressed in *State v. Bise*, applies to "appellate review for a trial court's sentencing decision to either grant or deny judicial diversion." *Id.* at 325. Importantly, however, the court emphasized that the adoption of the *Bise* standard of review "did not abrogate the requirements set forth in *Parker* and *Electroplating*, which are essential considerations for judicial diversion." *Id.* at 326.

The trial court need not provide a recitation of all the applicable "factors when justifying its decision on the record in order to obtain the presumption of reasonableness," but "the record should reflect that the trial court considered the *Parker* and *Electroplating* factors in rendering its decision and that it identified the specific factors applicable to the case before it." *King*, 432 S.W.3d at 327. When the trial court considers each of the factors enumerated in *Parker* and weighs them against each other, placing its findings in the record, as required by *Electroplating, Inc.*, we "apply a presumption of reasonableness," per *Bise*, and will "uphold the grant or denial so long as there is any substantial evidence to support the trial court's decision." *Id.* When "the trial court fails to consider and weigh the applicable common law factors, the presumption of reasonableness does not apply and the abuse of discretion standard . . . is not appropriate." *Id.* Instead, "the appellate courts may either conduct a *de novo* review or, if more appropriate under the circumstances, remand the issue for reconsideration. "The determination as to whether the appellate court should conduct a *de novo* review or remand for reconsideration is within the discretion of the reviewing court." *Id.* at 328.

The State agrees that the trial court did not specifically list the required factors but posits that the case need not be remanded as the record is sufficient for our *de novo* review. We agree and conclude that, although the trial court did not expressly address all of the relevant factors, the record is sufficient for a *de novo* review. *See King*, 432 S.W.3d at 328. The record herein contains the circumstances of the offense, the presentence report, the transcript of the sentencing hearing, and the victim impact statement.

- 8 -

We first note that the Defendant is "qualified" for judicial diversion under the requirements of Tennessee Code Annotated section 40-35-313(a)(1)(B) (2019). We therefore turn to discuss the factors enumerated in *Parker* and *Electroplating*. The Defendant appears to be amenable to correction in that he has completed multiple courses offered to him by the Army, has not had contact with the victim, has an exemplary military career, and has expressed remorse. This factor weighs in favor of granting judicial diversion. Weighing against the Defendant, however, are the circumstances of this offense, and the Defendant's prior criminal record. The Defendant by his own admission became incensed when his wife refused his sexual advances. She fled their marital home in a car, leaving her two young children behind. The Defendant got into his vehicle, ran her car down, and then rammed it. He then got out a baseball bat and beat the victim with the bat. The victim suffered serious bodily injury and continued up to the time of sentencing to suffer physical impairments as a result of the injuries the Defendant inflicted. Additionally, this was not the first time that the Defendant committed an act of violence against the victim. The Defendant was convicted in 2015 of misdemeanor domestic assault against this victim, and he went to classes as a result of his conviction. The Defendant has a good social history, evidenced by supported from many family members at the hearing. The record also evinces that he appeared to be in good physical and mental health, serving active duty in the military. We find, as did the trial court, that "this is a very serious offense and it's conduct that we simply cannot tolerate in our society." The deterrence value to the accused as well as to others to avoid depreciating the seriousness of this offense weighs against granting the Defendant judicial diversion.

Having weighed the aforementioned factors, we conclude that the circumstances of the offense, the Defendant's criminal history of violence against this victim, and the need for deterrence weigh heavily against granting the Defendant judicial diversion. Based upon our *de novo* review of the record and applicable factors, we conclude that the ends of justice would not be served by granting the Defendant's request for judicial diversion. Therefore, even though the trial court did not adequately consider all of the necessary factors, the record supports the trial court's denial of judicial diversion.

## II. Conclusion

In accordance with the aforementioned reasoning and authorities, we affirm the trial court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE

- 9 -