IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs July 8, 2020

**STATE OF TENNESSEE v. ROBERT THOMAS**

**Appeal from the Criminal Court for Shelby County**
**No. 18-01851, 19-00442    Paula L. Skahan, Judge**
_____

**No. W2019-01697-CCA-R3-CD**
_____

The Defendant, Robert Thomas, entered guilty pleas to facilitation of attempted especially aggravated robbery and possession of marijuana with intent to sell. The Defendant requested probation and judicial diversion. The trial court held a hearing and sentenced the Defendant to concurrent sentences of six years of probation for the facilitation of attempted especially aggravated robbery conviction and "one year and time served" for the drug conviction. The trial court denied judicial diversion, and the Defendant appeals. We conclude that the trial court did not abuse its discretion in denying diversion, and we affirm the judgments and remand for correction of the various judgment forms.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed;**
**Case Remanded**

JOHN EVERETT WILLIAMS, P.J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and J. ROSS DYER, JJ., joined.

Phyllis L. Aluko, Public Defender; Barry W. Kuhn (on appeal) and Nigel Lewis (at plea hearing), Assistant Public Defenders, for the appellant, Robert Thomas.

Herbert H. Slatery III, Attorney General and Reporter; Katharine K. Decker, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Danielle McCollum, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTUAL AND PROCEDURAL HISTORY**

The Defendant's convictions stem from unrelated offenses committed approximately one year apart. On May 24, 2017, the Defendant, a gang member, was

involved in a robbery-turned-shoot-out which left his own close friend dead and two other participants seriously injured. The trial court observed that, due to an absence of witnesses at the preliminary hearing, the Defendant was subsequently released for a period of time. On April 12, 2018, however, a grand jury returned indictment number 18-01851, charging the Defendant and a co-defendant with attempted especially aggravated robbery, attempted second degree murder, and employment of a firearm during the commission of or attempted commission of the dangerous felony of attempted second degree murder. The Defendant was arrested for possession of marijuana on May 9, 2018, and in indictment number 19-00442, he was charged with possession of marijuana with intent to sell and possession of marijuana with intent to deliver.

The trial court held a hearing during which it accepted the guilty pleas and determined the sentences. The parties agreed that the Defendant was entering a guilty plea to the lesser-included offense of facilitation of attempted especially aggravated robbery in Count 1 of indictment number 18-01851 and a guilty plea to possession of marijuana with intent to sell in Count 1 of indictment number 19-00442. The remaining charges were to be dismissed, and the parties had agreed that the minimum sentence for the facilitation of attempted especially aggravated robbery conviction would be six years. At the hearing, the Defendant agreed with the prosecutor's recitation of the evidence that would be presented at trial, and he also testified regarding the circumstances of the offenses.

Regarding the shooting, the Defendant testified that Mr. Theodis Pitchford, who was "like a big brother" to him, picked him up so that the two could attend a high school graduation. As they were driving, Mr. Pitchford saw the co-defendant, Mr. Deairius Nash, walking in the rain, accompanied by a juvenile. Mr. Nash and the juvenile informed Mr. Pitchford and the Defendant that they were planning to rob someone by offering a gun for sale and then taking both the gun and the payment. Mr. Pitchford, the Defendant, and Mr. Nash were all members of the same gang, and Mr. Pitchford indicated he would assist in the robbery. The Defendant asserted he did not intend to participate in the robbery but did not want to leave the car because of the rain.

The four arrived at the pre-arranged location, and all the occupants of the car, including the Defendant, got out. The men whom they were meeting all had weapons, but Mr. Nash and the juvenile nevertheless proceeded with the robbery by drawing their weapons, holding their weapons to a man's head, and telling the man to "drop it off." Gunfire ensued. The Defendant returned to the vehicle to retrieve his own gun and began to shoot. Mr. Pitchford was killed during the confrontation, and the Defendant fled in Mr. Pitchford's vehicle. According to the prosecutor, the Defendant gave a statement to police acknowledging that he knew that Mr. Nash and the juvenile were planning a

robbery and that he participated in the subsequent shoot-out initiated by Mr. Nash and the juvenile.

The prosecutor's recitation of facts included other witness statements. One of the victims of the robbery had approached police at the scene and told officers that he, Mr. Christian Smith, and another man were planning to purchase a cell phone when a group of men began to fire on them. Officers were able to detain the vehicle occupied by Mr. Smith, and Mr. Smith, who was the named victim of crimes charged in the indictment, was transported to the hospital in critical condition, suffering from multiple gunshot wounds. In a statement to police, Mr. Smith stated he was attempting to buy a gun when the seller "pulled a gun on him and started to fire." Mr. Smith was able to identify the Defendant, Mr. Nash, and the juvenile from a photographic lineup.

At the hospital, the juvenile who had been involved in the crime was also being treated and had been "downgraded to stable condition." The juvenile gave a statement acknowledging that he fired his weapon during the shooting.

Had the marijuana offense proceeded to trial, the State would have introduced evidence that officers were responding to a narcotics complaint at an abandoned home when they saw the Defendant counting money in a vehicle. The Defendant opened the door, and they smelled marijuana. In the vehicle, they located two large jars containing 93.4 grams of marijuana, digital scales, and $662 in cash, mainly in small denominations, including nineteen $1 bills and thirty-two $5 bills.

The Defendant, in his testimony, denied selling drugs and stated that the marijuana was for his personal use, that he was never counting the cash, and that the money was from a check he had gotten for work and had cashed. He stated he used the scales to see how much marijuana he was consuming.

The Defendant attended school through the ninth grade and testified he was in resource classes and had difficulty reading and writing. He stated he was bullied but was never involved in fights in school. He acknowledged he was expelled from school. The Defendant had been in custody approximately fifteen months, and his girlfriend and mother could both help him abide by the conditions of any probationary sentence. He affirmed he would attend anger management and other classes, and he stated that he wanted to obtain his GED and go to trade school. He testified he was sorry for his mistakes. He acknowledged that he used drugs, including marijuana and Xanax.

The Defendant's girlfriend, Ms. Rashaundra Butler, testified that the Defendant had "potential" but needed "guidance." Ms. Butler was willing to allow the Defendant to live with her and thought she could help him obtain employment. She said she had

noticed a change in the Defendant and could help him stay away from his prior associates.

Ms. Nakia Thomas, the Defendant's mother, likewise stated that she could assist the Defendant if he were given probation. She had consulted her supervisor about rehiring the Defendant, who had briefly worked at her workplace of four years. She stated the Defendant was a "good child" who was misled by the "wrong crowd" and that he had changed "tremendously" since going to jail.

The presentence report is not part of the record on appeal, but the trial court referred to it in finding that the Defendant had been expelled from school for fighting and that he reported drug use. The court noted that the Defendant was criminally responsible for the offenses associated with the robbery and that when he was released, he committed another offense. The trial court sentenced the Defendant to six years of probation for the facilitation of attempted especially aggravated robbery and to "one year and time served" for the marijuana conviction. The trial court noted that the Defendant had been in jail for over one year and that the court would not have sentenced him to probation for the facilitation of attempted especially aggravated robbery if he had not already been imprisoned for a significant time.

In denying diversion, the trial court examined the relevant common law factors. Regarding the Defendant's amenability to correction, the trial court found that the Defendant's arrest for the drug charges approximately one year after his release on the shooting charges demonstrated he was not amenable to correction. Regarding the circumstances of the offenses, the trial court found that the shooting was "very, very serious" and had resulted in death and serious injuries to the participants. The Defendant's lack of a criminal record weighed in favor of diversion. The court noted that the Defendant's social history from the presentence report demonstrated a history of drug and alcohol abuse and that the Defendant was expelled from school for fighting. The trial court found that the Defendant's physical health was "fine" and that his mental health was "okay" but impaired by drug addiction. Regarding deterrence, the trial court noted that the Defendant's behavior should not be tolerated and that diversion "is not the message we want to send." The court also found that diversion would not serve the interests of the public because the public should be warned about "this type of behavior," and the trial court denied diversion.

## ANALYSIS

The Defendant appeals the denial of judicial diversion. When a qualified defendant pleads guilty or nolo contendere to certain designated felonies, the trial court may defer proceedings and place the defendant on probation without entering a judgment

of guilt. T.C.A. § 40-35-313(a)(1)(A) (2012). Judicial diversion is a "'legislative largess,'" and eligibility for diversion does not give rise to entitlement to diversion. *State v. King*, 432 S.W.3d 316, 323 (Tenn. 2014) (quoting *State v. Schindler*, 986 S.W.2d 209, 211 (Tenn. 1999)). "If the accused successfully completes the requisite probationary period, the trial court is required to discharge the accused and dismiss the proceedings," and the offender's record may be expunged. *State v. Parker*, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996). The effect of expungement is to restore the defendant to the position occupied prior to arrest or indictment or information. *King*, 432 S.W.3d at 323. If the probationary period is not successfully completed, then judgment of guilt is entered and a sentence is imposed. *Id.* The statute defines which defendants are qualified to apply for diversion, and the parties here do not dispute that the Defendant was a qualified to be considered for diversion. *See* T.C.A. § 40-35-313(a)(1)(B)(i).

Like other sentencing decisions, the decision to grant or deny diversion is reviewed for an abuse of discretion. *King*, 432 S.W.3d at 324-25. "Reviewing courts will find an abuse of discretion only when the trial court applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employed reasoning that causes an injustice to the complaining party." *State v. Banks*, 271 S.W.3d 90, 116 (Tenn. 2008). Although the deferential standard of review articulated in *Bise* applies to the decision to grant or deny diversion, the common law factors which the trial court has long been required to consider in its decision have not been abrogated. *King*, 432 S.W.3d at 326. Accordingly, in determining whether judicial diversion is appropriate, a trial court must consider:

> (a) the accused's amenability to correction, (b) the circumstances of the offense, (c) the accused's criminal record, (d) the accused's social history, (e) the accused's physical and mental health, and (f) the deterrence value to the accused as well as others. The trial court should also consider whether judicial diversion will serve the ends of justice — the interests of the public as well as the accused.

*Parker*, 932 S.W.2d at 958 (footnote omitted); *see State v. Electroplating, Inc.*, 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998). In addition to considering these factors, the trial court must weigh them against one another and place an explanation of its ruling on the record. *King*, 432 S.W.3d at 326 (citing *Electroplating, Inc.*, 990 S.W.2d at 229).

If the trial court has adhered to these requirements, the reviewing court merely looks to see whether "any substantial evidence" exists in the record to support the trial court's decision. *Id.* "Under the *Bise* standard of review, when the trial court considers the *Parker* and *Electroplating* factors, specifically identifies the relevant factors, and places on the record its reasons for granting or denying judicial diversion," this court

must apply a presumption of reasonableness and uphold the trial court's decision so long as there is any substantial evidence to support the decision. *Id.* at 327. The trial court need not "recite" all of the factors, but the record must reflect that it considered each factor, identified the specific factors applicable to the case, and addressed the relevant factors. *Id.*

If the trial court does not consider the appropriate factors delineated in *Parker* and *Electroplating* or does not place its reasons for granting or denying diversion on the record, then "presumption of reasonableness does not apply and the abuse of discretion standard, which merely looks for 'any substantial evidence' to support the trial court's decision, is not appropriate." *Id.* Instead, the appellate court may, in its discretion, either review de novo or remand for reconsideration. *Id.* at 328.

Here, the trial court addressed each of the *Parker* and *Electroplating* factors. The trial court concluded that the Defendant's lack of amenability to correction, the circumstances of the offense, the Defendant's social history, the deterrence value of the punishment, and interests of the public weighed against diversion. The trial court found that the Defendant's commission of the drug crime after he had been released from custody on the robbery charges demonstrated he was not amenable to correction; that the circumstances of the shooting were serious in that they involved multiple participants suffering either serious injury or death; that the Defendant's social history was "not good" because he had a history of drug abuse and had been expelled for fighting; and that granting diversion would "send the wrong message" and work against the interests of the public in maintaining awareness of crime.

The trial court appears to have found that the Defendant's criminal history weighed in favor of diversion, as he had never had a prior criminal charge. We read the trial court's findings regarding the Defendant's physical and mental health as determining that these factors were neutral. The trial court found that the Defendant's physical health was "fine" and that his mental health was "okay other than the problems with the drug abuse."

The trial court noted in denying diversion that the Defendant's charges had already been reduced for a crime that resulted in the death of one participant and the hospitalization of two others with gunshot wounds. The trial court observed that the Defendant was criminally responsible for the acts of the other robbery participants and that the crime resulted in injury and death. The court also relied particularly on the Defendant's continued criminal activity after his release. The Defendant invites us to re-evaluate the trial court's determinations regarding each factor, but because the trial court adhered to the requirements of *Parker* and *Electroplating*, our review is limited to determining whether "any substantial evidence" exists in the record to support the trial

court's decision.  *King*, 432 S.W.3d at 326.  We conclude that the record supports the trial court's decision, and we accordingly affirm the judgments and the denial of diversion.

The record includes a judgment form for the Defendant's conviction for facilitation of attempted especially aggravated robbery, and we discern no errors in this form.  As both parties observe, the judgment form dismissing Count 2 of indictment 18-01851 incorrectly states that the charged offense was attempted especially aggravated robbery rather than attempted second degree murder.  There is no judgment form for Count 3, employment of a firearm in the commission or attempt to commit second degree murder, although a notation on Count 2 indicates that Count 3 is likewise dismissed.

The judgment form for the Defendant's drug conviction likewise requires correction.  At the hearing, the trial court sentenced the Defendant to "one year and time served" for possession of marijuana with intent to sell.  The Defendant had apparently been in jail for approximately fifteen months at the time.  The judgment form for this conviction sentences the Defendant to one day in the county jail, with a notation of "Time Served" near the top of the form and in the "Special Conditions" section.  The Defendant was awarded pretrial jail credits of one day.  Possession of between 14.175 and 4535 grams, inclusive, of marijuana is a Class E felony.  T.C.A. § 39-17-417(g)(1).  An authorized sentence for a Class E felony is "not less than one (1) year nor more than six (6) years."  T.C.A. § 40-35-111(b)(5); *see also* T.C.A. § 40-35-112(a)(5) (a Range I sentence for a Class E felony is not less than one nor more than two years).  Accordingly, a single day is not an authorized sentence for the crime to which the Defendant pled guilty.  The transcript reflects that the trial court sentenced the Defendant to "time served," which was approximately fifteen months in jail.  We remand for correction of the judgment forms discussed above and for entry of a judgment form in Count 3 of indictment number 18-01851.

## CONCLUSION

Based on the foregoing, we affirm the trial court's judgments but remand for correction of the judgment forms and entry of a judgment in Count 3 of indictment 18-01851.

_____
JOHN EVERETT WILLIAMS, PRESIDING JUDGE

- 7 -