IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs September 29, 2020

## STATE OF TENNESSEE v. JASHUN YANCE ROBERTSON

**Appeal from the Circuit Court for Fayette County**
**No. 19-CR-141      J. Weber McCraw, Judge**

_____

### No. W2020-00439-CCA-R3-CD

_____

Defendant, Jashun Yance Robertson, appeals the Fayette County Circuit Court's denial of his request for judicial diversion pursuant to Tennessee Code Annotated section 40-35-313. Defendant contends that the trial court abused its discretion by relying on Defendant's prior delinquent acts to deny diversion, when there was no proof regarding these acts in the record, and by failing to consider the "judicially recognized differences between juveniles and adults" in reaching its decision. Upon review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., and TIMOTHY L. EASTER, JJ., joined.

A. Blake Neill, Somerville, Tennessee, for the appellant, Jashun Yance Robertson.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Assistant Attorney General; Mark E. Davidson, District Attorney General; and Raven Icaza, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### I. Factual and Procedural Background

In November 2019, the Fayette County Grand Jury indicted Defendant, along with fourteen other individuals, for vandalism in the amount of $10,000-$60,000, felony escape, aggravated riot, and assault. Defendant pled guilty to the offenses as charged, as

a Range I standard offender.  At the guilty plea submission hearing, the State provided the following factual basis for Defendant's plea:

> [H]ad this matter gone to trial, the State would have offered proof through Investigator Mark Holloway, Investigator Tim (unintelligible), Sergeant Kenny Cook, of the Fayette County Sheriff's Department, along with Andy Barcroft of the Wilder Youth Development Center and others, that on or about September 23, 2019, Sergeant Cook met with complainant victim, Graylon Butler, who was the victim of an assault that occurred at the Wilder Youth Development Center at 13870 Highway 59 here in Fayette County.  Mr. Butler, who is an employee at the Youth Center, advised that on September 22 around 5:00 p.m. six juveniles and two adults, including a [Dakevion] Brown and [Defendant] attacked him, punching and kicking him in the face and body and attempted to take the security keys from him.  The juveniles, Mr. Brown, and [Defendant] became very destructive, busted a door open from what is referred to as the true building -- it's a therapeutic response unit; it's also a dormitory -- and began to riot along with several other individuals throughout the facility, running from building to building, climbing on top of roofs and vandalizing several doors and windows, causing extensive damage to the buildings of the facility.  The total damage was $32,115.00.
>
> Tennessee Highway Patrol and Fayette County Sheriff's Department made the scene.  Mr. Butler was checked out by EMS personnel on scene and taken to the hospital by his personal vehicle.  He sustained several contusions, bruising, swelling on his face and body as well as a slight concussion from the assault.

Pursuant to a plea agreement, the trial court sentenced Defendant to concurrent sentences of three years at thirty percent for vandalism in the amount of $10,000-$60,000; one year at thirty percent for felony escape; one year at thirty percent for aggravated riot; and eleven months and twenty-nine days for assault.  The trial court denied judicial diversion and suspended the effective three-year sentence to supervised probation but ordered it to run consecutively to Defendant's "juvenile matters."[1]

As part of the plea agreement, the parties submitted to the trial court the issue of whether Defendant would receive judicial diversion pursuant to Tennessee Code

---

[1] During the guilty plea submission hearing, defense counsel explained to the trial court that "if there's any of his juvenile time left, then he'll have to be -- he'll have to go back to juvenile -- the Department of Juvenile Services or Children Services and serve that time and then be released to this probation."

Annotated section 40-35-313.[2]  The State submitted a copy of Defendant's presentence report without objection from Defendant.  The presentence report indicated that Defendant was eighteen years old at the time of the instant offenses.  The report noted that Defendant had no prior criminal record; however, it indicated that Defendant was "adjudicated to have committed a delinquent act or acts as a juvenile that would constitute a felony if committed by an adult" as an applicable enhancement factor.  The report also noted that Defendant was assessed with the Strong-R assessment tool, which resulted in a score of "high for violence risk level."  Additionally, the report stated that Defendant had been expelled from high school his junior year for fighting other male students and that Defendant had not obtained a GED.  It indicated that he was enrolled in an in-patient drug treatment center in 2016 but was "kicked out" for fighting and being "out of [the] area trying to see females."  Defendant reported that his mental health was "poor" but that his physical health was "excellent."  He admitted that he began smoking marijuana in 2014 at the age of thirteen, that he smoked more than five times a day, and that he stopped smoking marijuana when he went to jail on October 25, 2019.  Defendant further admitted to using non-prescribed "pills" beginning in 2018 when he was seventeen years old.  He estimated that he took "[two] pills every two weeks" and explained that he stopped taking the pills when he went to jail.  The presentence report indicated that Defendant lived with his mother and siblings, that he had never been married, and that he had no children.  Defendant reported that he had been employed at a tire store for approximately a year in 2016-2017 but that he quit because he "got tired of it."

Defendant provided the trial court with a certificate of eligibility from the Tennessee Bureau of Investigation, which indicated that Defendant had no prior disqualifying felony or misdemeanor convictions.  In arguing that Defendant should receive diversion, defense counsel stated:

> The first factor is [Defendant's] amenability to correction, and I understand the Court has some concerns with that considering my client was at Wilder Youth Development Center which means that he has a history of juvenile conduct that would place him at the center, and so the Court has concerns of whether he is amenable to correction.  Your Honor, I would say that those acts were committed while he was a juvenile.  He is now an adult.  He is going to be on probation for three years and so that three[-]year period is going to show whether he is amenable to correction and if he violates during the term of that three years then, obviously, he is going to lose his diversion and it's going to be a nonfactor, and so we

---

[2] At the hearing, the State took no position on the issue of judicial diversion.

- 3 -

would ask the Court to use these next three years to show whether he has learned anything and whether he is amenable to correction.

. . . .

[Defendant's] criminal record, Your Honor, there's been no evidence of that submitted to the Court. The only thing I've seen, and in talking to him, it doesn't seem that he has any violent offenses as a juvenile. It seems to be mostly property and burglary, burglary of automobiles, from my knowledge, so he doesn't have a history of violence.

At the close of the hearing, the trial court denied Defendant's judicial diversion request. This timely appeal follows.

## II. Analysis

Defendant asserts that the trial court abused its discretion by relying on Defendant's prior delinquent acts to deny diversion when there was no proof regarding these acts in the record and by failing to consider the "judicially recognized differences between juveniles and adults" in reaching its decision. The State responds that the trial court properly denied Defendant's request for judicial diversion.

Tennessee Code Annotated section 40-35-313 governs judicial diversion. Upon a finding of guilt, the trial court may defer further proceedings and place a qualified defendant on probation without entering a judgment of conviction. Tenn. Code Ann. § 40-35-313(a)(1)(A) (2020). Once the defendant successfully completes probation, the charge will be dismissed. Tenn. Code Ann. § 40-35-313(a)(2) (2020). The statute defines a "qualified defendant" as a defendant who:

(a) [i]s found guilty of or pleads guilty or nolo contendere to the offense for which deferral of further proceedings is sought;

(b) [i]s not seeking deferral of further proceedings for any offense committed by any elected or appointed person in the executive, legislative or judicial branch of the state or any political subdivision of the state, which offense was committed in the person's official capacity or involved in the duties of the person's office;

(c) [i]s not seeking deferral of further proceedings for a sexual offense, a violation of § 71-6-117 or § 71-6-119, driving under the influence of an intoxicant as prohibited by § 55-10-401, or a Class A or B felony;

- 4 -

(d) [h]as not previously been convicted of a felony or a Class A misdemeanor for which a sentence of confinement is served; and

(e) [h]as not previously been granted judicial diversion under this chapter or pretrial diversion.

Tenn. Code Ann. § 40-35-313(a)(1)(B)(i) (2020).

However, eligibility under the statute does not entitle a defendant to judicial diversion; instead, the decision whether to grant judicial diversion is left to the trial court's discretion. *State v. King*, 432 S.W.3d 316, 323 (Tenn. 2014). The defendant bears the burden of proving that he or she is a suitable candidate for judicial diversion. *State v. Faith Renea Irwin Gibson*, No. E2007-01990-CCA-R3-CD, 2009 WL 1034770, at *4 (Tenn. Crim. App. Apr. 17, 2009) (citing *State v. Curry*, 988 S.W.2d 153, 157 (Tenn. 1999); *State v. Baxter*, 868 S.W.2d 679, 681 (Tenn. Crim. App. 1993)).

When determining whether to grant judicial diversion to a qualified defendant, the trial court must consider the following factors:

(a) the accused's amenability to correction; (b) the circumstances of the offense; (c) the accused's criminal record; (d) the accused's social history; (e) the accused's physical and mental health; (f) the deterrence value to the accused as well as others; and (g) whether judicial diversion will serve the interests of the public as well as the accused.

*State v. Electroplating, Inc.*, 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998); *State v. Parker*, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996). In addition to the *Parker* and *Electroplating* factors, the trial court may consider the following factors in making its decision: "[the defendant's] attitude, behavior since arrest, prior record, home environment, current drug usage, emotional stability, past employment, general reputation, marital stability, family responsibility[,] and attitude of law enforcement." *State v. Anthony Adinolfi*, No. E2013-01286-CCA-R3-CD, 2014 WL 2532335, at *2 (Tenn. Crim. App. June 2, 2014) (quoting *State v. Washington*, 866 S.W.2d 950, 951 (Tenn. 1993)) (internal quotation marks omitted). The record must reflect that the trial court weighed all the *Parker* and *Electroplating* factors against each other, and the trial court must give an explanation of its ruling on the record. *King*, 432 S.W.3d at 326; *Electroplating*, 990 S.W.2d at 229.

We review a trial court's decision regarding judicial diversion under the same standard set forth in *State v. Bise*, 380 S.W.3d 682 (Tenn. 2012). *King*, 432 S.W.3d at

324. Applying the *Bise* standard to judicial diversion decisions, if the trial court considers the *Parker* and *Electroplating* factors, specifically identifies the relevant factors, and places on the record its reasoning for granting or denying judicial diversion, then "the appellate court must apply a presumption of reasonableness and uphold the grant or denial so long as there is any substantial evidence to support the trial court's decision." *Id.* at 327. The trial court need not recite all the *Parker* and *Electroplating* factors when justifying its decision on the record in order to be granted a presumption of reasonableness. *Id.* However, the record should reflect that the trial court considered the factors when rendering its decision and that it identified the relevant factors applicable to the case. *Id.* Once the trial court identifies the relevant factors, it may proceed solely on those. *Id.*

In denying judicial diversion, the trial court stated:

It appears that [Defendant] is eligible for consideration not having previously been granted diversion or to previously being convicted of an adult crime. The Court is required to go through these factors to determine whether or not he is a good candidate for judicial diversion. Again, the Court has indicated there is a pre-sentence report. Largely, the Court is going to take information as contained in it and make its findings. The Court also will note the circumstances of the offense, that all of this happened while [Defendant] was already under the watchful eye of the State of Tennessee so the Court has some concern about his amenability to correction. He was already subject to correction and all these [offenses] occurred while under that supervision. Therefore, the likelihood of his amenability to correction, since these offenses occurred while in state custody, is poor.

Again, looking to his amenability of correction, while it is true he does not have a criminal history as far as an adult history of having any criminal convictions, the Court would note that these acts for which he was in the Department of Children Services or under the guide of the department would have been felonies if they had been committed by an adult, so, again, he is being monitored for activity, has performed poorly while being so monitored. Again, the Court just finds he's not amenable to correction.

Again, circumstances of the offense, there is great damage to property. There is an assault on people. He tried to violate his terms of confinement so the circumstances of the events are serious. Again, while

he does not have a criminal record, all those occurred while he was being confined.

Moving on to his social history, they do not bode well for him. Going through, he does not have his high school education. It says in the pre-sentence report he got expelled his junior year for fighting other male students. It also indicates that he's had drug problems. He got kicked out of Memphis Recovery Center for fighting, for being out of the area finding some females. His present mental health, according to the pre-sentence report, is poor, so not only his social history but also his mental health history is poor.

Continuing to look at the pre-sentence report, it indicates he gets angry fast, so he does not handle situations very well. With regard to drug use, when questioned how much [Defendant stated] five plus times daily, last use would have been October of last year, so apparently, according to the pre-sentence report, he was using marijuana while he was in the confines of the State. Made some reference to pills, he said he took two pills every other week. He doesn't say what type of pills but also this was in October of last year. So it does not appear that these were legally prescribed pills. Reason for quitting, because he had been in jail.

With regard to the deterrence value to the defendant and others, again, this is a large number of people who were charged. They all were doing this while being in state confinement. There needs to be some deterrent value to those who are charged with these crimes, that they're done in spite of being confined, so the Court believes it needs to send a deterrence to others who are similarly housed in similar places.

And, then, lastly, whether judicial diversion will serve the ends of justice. I don't see how granting someone with his history at a young age serves justice in any way. Serving justice would be a young man his age abiding by rules, respecting the law, respecting the people who are trying to counsel and help him.

So going through all factors, the Court does not find he is amenable to correction. The Court looks partially upon the circumstances of the events all committed while being housed while people are trying to help to better him. He took advantage of the situation. While true he does not have a criminal record, he has a record of criminal offenses if he had been an adult would be so categorized. His social history is poor. His mental

health is poor. His plus side, I see no detriment to his physical health. Deterrence value for others, there's a need for the Court to recognize that and the Court sees no reason how judicial diversion will serve the ends of justice. So I considered all the factors and the Court does not feel like [Defendant] is a good candidate for judicial diversion for all of those reasons.

Here, the trial court clearly considered and weighed all the *Parker* and *Electroplating* factors and explained on the record its reasons for denying Defendant's request for judicial diversion, and there is substantial evidence in the record to support the trial court's decision. Thus, the trial court's decision is entitled to a presumption of reasonableness under *King*. *See id.*

Defendant argues that the trial court improperly considered his prior juvenile record because there was no proof in the record regarding Defendant's delinquent acts. Although the record does not contain copies of prior juvenile delinquency adjudications, the State offered evidence that Defendant was in state custody and confined at Wilder Youth Development Center when he committed the instant offenses. We note that reliable hearsay may be admitted at a sentencing hearing so long as the opposing party has an opportunity to rebut the same. *See* Tenn. Code Ann. § 40-35-209(b). The presentence report stated that Defendant was "adjudicated to have committed a delinquent act or acts as a juvenile that would constitute a felony if committed by an adult[,]" and Defendant admitted engaging in prior delinquent behavior—in the form of marijuana and pill use—to the presentence report writer. Moreover, defense counsel acknowledged to the trial court that Defendant had "a history of juvenile conduct that would place him at the center" but asserted that Defendant had prior "property and burglary" offenses and no "violent offenses as a juvenile." Thus, we conclude that the record was sufficient for the trial court to consider Defendant's prior record of juvenile delinquency in denying judicial diversion.

Defendant also argues that the trial court abused its discretion by failing to consider the "judicially recognized differences between juveniles and adults" in reaching its decision. Citing *Miller v. Alabama*, 567 US 460, 471 (2012), and *Roper v. Simmons*, 543 US 551, 570 (2005), Defendant asserts that the trial court should have considered his "youthfulness" when addressing each of the judicial diversion factors.

In *Roper*, the Supreme Court of the United States held that execution of individuals who were under eighteen years of age at time of their capital crimes was prohibited by the Eighth and Fourteenth Amendments. *Roper*, 543 US at 570. The Supreme Court held in *Miller* that a mandatory sentence of life imprisonment without parole for defendants under the age of eighteen at the time of their crimes violated the

Eighth Amendment's prohibition against cruel and unusual punishment. *Miller*, 567 US at 471. As pointed out by the State, however, Defendant was an adult at the time of the instant offenses. "As an adult, Defendant assaulted an employee of the center and engaged in vandalism, rioting, and felony escape." In any event, judicial diversion is a form of "legislative largess," to which a defendant is not automatically entitled, *State v. Schindler*, 986 S.W.2d 209, 211 (Tenn. 1999), and Defendant has presented no authority indicating that the Eighth Amendment is implicated in a trial court's denial of judicial diversion. Defendant argues that, without judicial diversion, he will have to deal with the stigma and collateral consequences of having a felony criminal conviction. Although correct, these consequences were the direct result of Defendant's actions and conduct, both as an adult and as a juvenile.

## III. Conclusion

The trial court did not abuse its discretion in denying judicial diversion pursuant to Tennessee Code Annotated section 40-35-313. The judgments of the trial court are affirmed.

_____
ROBERT L. HOLLOWAY, JR., JUDGE