IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
September 15, 2020 Session

**STATE OF TENNESSEE v. ARMIN LARS BEGTRUP**

**Appeal from the Criminal Court for Davidson County**
**No. 2016-C-1905    Mark J. Fishburn, Judge**

—————————————————————

**No. M2019-02038-CCA-R3-CD**

—————————————————————

Defendant, Armin Lars Begtrup, was found guilty after a jury trial of two counts of aggravated perjury.   He was sentenced to three and one-half years of supervised probation.  The trial court granted judicial diversion.  Defendant timely filed a motion for new trial which the trial court denied.  On appeal, Defendant argues that the trial court violated his right to a unanimous verdict and that the evidence is not sufficient to sustain his convictions.   After a thorough review, we dismiss the appeal because we lack jurisdiction to consider the issues.

**Tenn. R. App. P. 3 Appeal as of Right; Appeal Dismissed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which THOMAS T. WOODALL, J. joined.  ROBERT W. WEDEMEYER, J., filed a separate concurring opinion.

Bernie McEvoy (at trial) and Patrick McNally (on appeal), Nashville, Tennessee, for the appellant, Armin Lars Begtrup.

Herbert H. Slatery III, Attorney General and Reporter; Caitlin Smith, Senior Assistant Attorney General; Glenn R. Funk, District Attorney General; and Brian Ewald and Sasha Beatty, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

*Facts and Procedural Background*

Defendant was indicted by the Davidson County Grand Jury on September 19, 2016 of two counts of aggravated perjury.   Jennifer LeBlanc, Defendant's ex-wife,

appeared before the grand jury in her capacity as a private citizen and offered testimony to support the charges.

At trial, Ms. LeBlanc stated that on May 15, 2014, she was notified that an order of protection had been filed against her. Ms. LeBlanc contacted her attorney and turned herself in to be booked and released. At the time Ms. LeBlanc turned herself in, she was several months pregnant. To support the order of protection, Defendant signed an affidavit of domestic assault in which he claimed that Ms. LeBlanc "appeared [at their child's school] and charged towards [him], swinging her fists and screaming that she was going to punch me in the face, over and over." Ms. LeBlanc denied that she was removed from the premises by other parents at the school. Ms. LeBlanc denied that a security guard stationed at the school came between her and Defendant. She sued Defendant in December 2014 to "recoup some of the losses from the tens of thousands of dollars [Defendant] has caused me to spend."

Ms. LeBlanc admitted that she was very upset with Defendant for being ninety-minutes late to pick up their child. On cross examination Ms. LeBlanc testified that she told Defendant, "I'm so mad, I could punch you in the face right now."

Ms. LeBlanc testified that she was contacted by the producers of the Judge Judy show. She explained that she was willing to appear on the show, but Defendant declined. Ms. LeBlanc testified that after Defendant declined to appear on Judge Judy, she filed a contempt petition against him in circuit court. Because nothing happened with the contempt petition, Ms. LeBlanc pursued perjury charges against the Defendant with the police and Davidson County District Attorney's Office. The police declined to investigate, and the district attorney told her they would not bring charges against Defendant for two reasons: (1) they did not want to discourage victims of domestic violence from coming forward, and (2) they only prosecuted perjury cases where there were two different lies told under oath. Ms. LeBlanc obtained permission to appear before the Davidson County Grand Jury as a private citizen to seek an indictment against Defendant.

On cross examination, Ms. LeBlanc stated that if she moved, Defendant would "simply have more time at [h]olidays." Ms. LeBlanc stated:

> [She] want[ed] [Defendant] to be convicted of perjury because he is a perjurer, and every court case we go to now, and ten years ago, and for the next ten years, the Judge will have to know [Defendant] is a perjurer because he is. That's why [she] want[ed] him convicted of a felony.

Ms. LeBlanc testified that she has told people that she hated Defendant and that Defendant "had ruined a good portion" of her life. She stated that she may have called Defendant inappropriate names in the presence of their child, S.B.[1] Ms. LeBlanc acknowledged that Defendant helped coach S.B.'s basketball team. She denied that she contacted Defendant's employer or media outlets in order to get Defendant fired from his job.

Bakari King testified that he did not witness the event. Brandy Turner-King testified that Ms. LeBlanc appeared to be very upset and angry but did not witness Ms. LeBlanc swing her arms or scream at Defendant.

Mr. Poole saw Defendant enter the gymnasium and have an exchange with Ms. LeBlanc in front of the bleachers. He did not see S.B. jump into Defendant's arms. He did not see Ms. LeBlanc pursue Defendant or swing her arms. Mr. Poole did not hear Ms. LeBlanc say that she would punch Defendant.

Officer Steven Popp, the security guard on duty at S.B.'s school, recalled that Defendant seemed upset and was trying to locate his daughter. Officer Popp testified that he did not have to place himself between Defendant and Ms. LeBlanc. He acknowledged that he did not hear the exchange between Defendant and Mr. LeBlanc, but told Defendant that because no assault occurred there was no need to create a police report. Officer Popp told Defendant to call the non-emergency number to pursue the matter further. Office Popp instructed Ms. LeBlanc to wait a minute so Defendant could leave.

Ms. Barnett witnessed nothing out of the ordinary between Defendant and Ms. LeBlanc. She did not recall hearing angry voices or shouting. Ms. Barnett did not see Ms. LeBlanc swing her arms at Defendant. Ms. Barnett testified that she was not "paying particular attention to what [Defendant and Ms. LeBlanc] were saying" and "[i]t's been so long, and all of this, I just don't know."

S.B. heard Ms. LeBlanc say she hated Defendant and use foul language to describe Defendant. S.B. testified that she had never heard Defendant use derogatory names in association with Ms. LeBlanc.

S.B. remembered the day she went to the international fair at school. When she saw Defendant from her seat on the bleachers, S.B. went down to give him a hug. S.B. stated that Ms. LeBlanc then "walked down to us, and pulled her fist up and said that she was going to punch him in the face." S.B. testified that Ms. LeBlanc had an angry tone to her voice and an angry look on her face. S.B. testified that Ms. LeBlanc followed her and

---

[1] To protect privacy, we have chosen to refer to the minor child by initials.

Defendant, Ms. LeBlanc continued yelling in a loud voice that she was going to punch Defendant.

Dr. David McMillan testified that he performed an evaluation in November 2015 that concerned Ms. LeBlanc's desire to move with S.B. to Colorado. Dr. McMillan testified that he evaluated S.B. to determine whether it was in her best interest to move. Dr. McMillan recalled that S.B. told him about the events of February 2014. Dr. McMillan stated that S.B. remembered Ms. LeBlanc was very angry that Defendant was late to pick her up and that Ms. LeBlanc "was yelling and screaming, and [S.B.] was afraid that [Ms. LeBlanc] was going to hit her father and hurt him." Dr. McMillan recalled S.B. stating that Ms. LeBlanc had threatened to punch Defendant.

Ms. Jennifer Ball, Defendant's girlfriend, testified that she rode with Defendant to pick up S.B. on February 28, 2014. She waited in the car while Defendant went in the school to find S.B. Ms. Ball stated that upon exiting the school, S.B. was "agitated or upset." S.B. got into the back seat of the car and told Ms. Ball that "mommy said she was going to punch daddy in the face." Ms. Ball recalled that after they left the school, they met some friends for dinner, and Defendant met outside to speak with the police. Ms. Ball did not recall Defendant making a 9-1-1 call.

After deliberations, the jury found Defendant guilty as charged on both counts. At the sentencing hearing Defendant requested a ruling on a thirteenth juror motion. The trial court stated that it believed the most credible witness during the trial was S.B. The trial court took the issue under advisement and later denied the motion.

Ms. LeBlanc testified at the sentencing hearing. She stated that this was not the first time Defendant perjured himself but that this was the first time that she was able to find a route to prosecute him. Ms. LeBlanc stated that Defendant lied so many times under oath that she was able to establish primary parenting to S.B. Ms. LeBlanc testified that in 2016, she was awarded attorney fees for the order of protection hearing. She stated that Defendant called the police on her so many times that she had lost count. Other than the award of attorney fees, Defendant suffered no repercussions for his "abuse of the justice system." Ms. LeBlanc stated that she "received nothing but lies and subterfuge from [Defendant] regarding anything and everything to do with [S.B.]. Ms. LeBlanc testified that Defendant "[maintained] such a cloak of secrecy that [she] often did not know when and if [S.B.] would be out of town or if [S.B.] [would] be able to attend extracurriculars." Ms. LeBlanc requested the trial court to order Defendant to sign S.B.'s passport application so S.B. could attend a class trip.

Defendant prepared and presented a judicial diversion certificate. John Daniels testified on behalf of Defendant. Mr. Daniels recounted that Defendant was his teacher

and helped him turn his life around. Defendant encouraged Mr. Daniels to attend college and expand his outlook on life. Mr. Daniels stated that Defendant had a great impact to the community.

Rebecca St. Clair testified that she had known Defendant since 2008. Ms. St. Clair described Defendant as "smart, energetic, and giving." She stated that Defendant realized his love of teaching while S.B. was learning to play chess. Ms. St. Clair testified that she knew S.B. and that Defendant had a great relationship with S.B.

Defendant testified that he loved learning and wanted to "give back to a world that [he] had prospered in" so he sought out a teaching opportunity. He began by helping with an after-school program then by tutoring students at Maplewood High School. From there he moved to Maury County Public Schools and became the S.T.E.M. director for Mount Pleasant High School. Defendant stated that he was "scared that a criminal conviction [would] be used to diminish [his] time with [his] daughter." Defendant was scared of losing his teaching position and the opportunity to serve his students.

The trial court found Defendant to be an especially mitigated offender. The trial court stated:

> [Defendant's sentence] would be one point eight years. That sentence is obviously suspended. [Defendant] will be placed on supervised probation under the provisions of [Tennessee Code Annotated section] 40-35-313 for a period of three years and six months. If at the conclusion of the first one year – one point eight years, it can be established to the satisfaction of the [c]ourt by a preponderance of the evidence, . . . , then the [c]ourt will entertain converting this to unsupervised probation, if things are going really well, to even terminate."

The trial court granted Defendant's request for judicial diversion. Defendant filed a timely motion for new trial and the trial court denied the motion. It is from the denial of that motion that Defendant now appeals.

*Analysis*

Defendant argues that the trial court failed to take precautions to ensure Defendant's right to a unanimous verdict. Defendant also argues that the evidence is not sufficient to sustain his conviction. Defendant further argues that he has a right of appeal even though no judgment of conviction was entered. The State argues that Defendant does not have a right to appeal because he was granted judicial diversion. In the alternative, the State argues that Defendant has waived review of his claim regarding his

right to a unanimous verdict and that Defendant has not established that a clear and unequivocal rule of law was breached to require plain error review. The State further argues that the evidence is sufficient to sustain Defendant's conviction. We agree with the State that we must dismiss the appeal for lack of jurisdiction.

"Judicial diversion is a form of 'legislative largess' available to qualified defendants who have entered a guilty or nolo contendere plea or have been found guilty of an offense without the entry of a judgment of guilt." *State v. King*, 432 S.W.3d 316, 323 (Tenn. 2014). In *State v. Norris*, this Court held that judicial diversion provides a defendant with a self-determined chance to emerge from legal proceedings without a conviction on his record. 47 S.W.3d 457, 463 (Tenn. Crim. App. 2000). Judicial diversion is governed by Tennessee Code Annotated section 40-35-313. According to this section, the court, with the consent of the defendant, defers further proceedings and places the defendant on probation without entering a judgment of conviction. *Norris*, 47 S.W.3d at 461; T.C.A. § 40-35-313(a)(1)(A). "[A]n appeal may not be taken from an order of judicial diversion because an order of diversion neither results in a judgment of conviction, nor any of the orders articulated in Tennessee Rule of Criminal Procedure 37(b) or Tennessee Rule of Appellate Procedure 3(b)." *State v. Thomas Pleas Watts*, No. M2016-02551-CCA-R3-CD, 2017 WL 3149641, at *1, (Tenn. Crim. App. July 25, 2017), *no perm. app. filed*. A final disposition of the case does not occur until either the defendant violates a condition of probation or the probation period ends. *See* T.C.A. §40-35-313(a)(2). If the defendant is successful in completing probation, the charges are dismissed, "without court adjudication of guilt." *Id*.

Our Supreme Court has stated that Rule 3 limits appeals as of right to those that are expressly enumerated in the Rule. *See State v. Lane*, 254 S.W.3d 349, 353 (Tenn. 2008). Tennessee Rule of Appellate Procedure 3(b) provides as follows:

> In criminal actions an appeal as of right by a defendant lies from any *judgment of conviction* entered by a trial court from which an appeal lies to the Supreme Court or Court of Criminal Appeals: (1) on a plea of not guilty; and (2) on a plea of guilty or nolo contendere, if the defendant entered into a plea agreement but explicitly reserved the right to appeal a certified question of law dispositive of the case pursuant to and in compliance with the requirements of Rule 37(b)(2)(A) or (D) of the Tennessee Rules of Criminal Procedure, or if the defendant seeks review of the sentence and there was no plea agreement concerning the sentence, or if the issues presented for review were not waived as a matter of law by the plea of guilty or nolo contendere and if such issues are apparent from the record of the proceedings already had. The defendant may also appeal as of right from an order denying or revoking probation, an order or judgment

entered pursuant to Rule 36 or Rule 36.1, Tennessee Rules of Criminal Procedure, from a final judgment in a criminal contempt, habeas corpus, extradition, or post-conviction proceeding, and from a final order on a request for expunction.

(emphasis added).

Here, Defendant asked for, and the trial court granted, judicial diversion. Therefore, no judgment of conviction was entered. The right to appeal under Rule 3 "lies" only from a "judgment of conviction." Accordingly, we conclude that this case must be dismissed for lack of jurisdiction.

Defendant also argues that this Court "often treats an improperly filed Rule 3 appeal as a Rule 10 extraordinary appeal" and requests that we do so in this case. *See* Tenn. R. App. P. 10(a). The State argues that an extraordinary appeal is not necessary for complete determination of the action on appeal. We agree with the State.

Tennessee Rule of Appellate Procedure 10(a) states that:
An extraordinary appeal may be sought on application and in the discretion of the appellate court alone of interlocutory orders of a lower court from which an appeal lies to the Supreme Court, Court of Appeals or Court of Criminal Appeals: (1) if the lower court has so far departed from the accepted and usual course of judicial proceedings as to require immediate review, or (2) if necessary for complete determination of the action on appeal as otherwise provided in these rules. The appellate court may issue whatever order is necessary to implement review under this rule.

Defendant admits that neither issue "pigeonholes neatly into the Rule 10(a) stringent criteria." If Defendant successfully completes judicial diversion, no judgment of conviction will be entered. *See* T.C.A. § 40-35-313(a)(1)(A). If Defendant fails to complete judicial diversion, a judgment of conviction will be entered, and Defendant will have the opportunity to appeal. *See id*. at (a)(2). Accordingly, we decline to convert Defendant's appeal into an appeal by permission pursuant to Rule 10.

Conclusion

Based upon the record and the parties' briefs, the appeal is dismissed.

_____
TIMOTHY L. EASTER, JUDGE

- 7 -