IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 13, 2024

**STATE OF TENNESSEE v. TINA BATTEN**

**Appeal from the Circuit Court for Sequatchie County**
**No. 2022-CR-78     Bradley Sherman, Judge**
_____

**No. M2023-00323-CCA-R3-CD**
_____

Tina Batten, Defendant, entered a best interest plea to aggravated assault and possession of a firearm while under the influence in exchange for a total effective sentence of five years with the length and manner of service of the sentence to be determined by the trial court. After a sentencing hearing, the trial court denied judicial diversion and ordered Defendant to a sentence of split confinement on the basis that granting diversion would depreciate the severity of the offenses and would have a detrimental effect on deterrence. Because the trial court failed to consider the proper factors in rendering its decision to deny diversion and failed to weigh those factors, we reverse and remand the case to the trial court for reconsideration. On remand, the trial court should utilize the factors set forth in *Parker* and *Electroplating*, weigh the factors against each other, and place an explanation of its ruling on the record.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., J., and CAMILLE R. MCMULLEN, P.J., joined.

Mitchell A. Raines (on appeal), Assistant Public Defender – Appellate Division, Franklin, Tennessee; Vanessa King (at plea), Assistant Public Defendant, Jasper, Tennessee, for the appellant, Tina Batten.

Jonathan Skrmetti, Attorney General and Reporter; Benjamin A. Ball, Senior Assistant Attorney General; Courtney C. Lynch, District Attorney General; and Steve Strain, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Defendant was indicted by the Sequatchie County Grand Jury for reckless endangerment, aggravated assault, and unlawful possession of a weapon while under the influence of alcohol or a controlled substance in September of 2022. The victim was named in the indictment as Defendant's neighbor, Ozark Boston. Defendant was also charged with public intoxication.

Defendant ultimately entered a best interest plea to one count of aggravated assault with an agreed-upon sentence of five years and one count of possession of a handgun while under the influence of an intoxicant with an agreed-upon sentence of 11 months and 29 days with the sentences to run concurrently. The trial court was to determine the method of service of the sentence at a sentencing hearing. At the plea hearing, counsel for the State relayed the factual basis for the plea as follows:

> Your Honor, if this matter came to trial, the State would be calling John Simmons with the Sequatchie County Sheriff's Department as well as [the victim] as well as other family members of [the victim]. The State would be showing that on April the 9th, of 2021, that [the victim] was going to take a vehicle belonging to [Defendant] or her now deceased husband to sell. It was by an agreement of the parties that the funds for the sale of the vehicle, which I believe was in excess of $20,000.00 dollars, was going to be going back to [Defendant and her now deceased husband]. [The victim] was doing this to help [Defendant and her husband] out. That she contacted [the victim], told him that she did not want to sell the car. He brought the car back. After that, [Defendant] threatened to kill [the victim]. She had a .38 revolver. She fired shots at the house. [The victim] would testify that he was in fear of death or serious bodily injuries. They -- law enforcement responded. Deputy Simmons went into the residence. He found [Defendant] on the back porch of her home. The .38 pistol was there. She was intoxicated. They also found spent shell casings in her trash can, and there was a -- there were holes in the [victim's] residence from the shooting. And that this all occurred in Sequatchie County.

A presentence report was prepared. The presentence report revealed that Defendant was in the Army "10/23/74 to 10/22/76," serving in Germany, and received an honorable discharge. Defendant received the National Defense Service Medal and the Good Conduct Medal. Defendant attended cosmetology school and barber college when she lived in Atlanta and then drove a school bus off and on for Sequatchie County Schools from 1997 to 2007. She had no prior criminal convictions. Defendant suffered from various health ailments including osteoarthritis, insomnia, and high blood pressure. Defendant reported a long history of mental health issues including post-traumatic stress disorder caused by

being raped while in the Army. Defendant's daughter reported that Defendant suffered from psychotic disorder, obsessive-compulsive disorder, mixed obsessional thoughts and acts, and dysthymic disorder. Defendant took various medications for these disorders over the years and, at the time of the presentence report, was taking medication for her mental health. Defendant was married for 45 years before her husband died one month after Defendant's incarceration. Defendant had one daughter, who she reported was taking advantage of her financially. The presentence report contained the following statement from Defendant:

> I am so very very sorry of offending [the victim] in the manner I did. I realize that a firearm should never, never be held or fired unless life is threatened. My actions ha[ve] caused a lot of pain and misunderstanding that I hope I will never cause again. I will definitely do better in the future.

The risk needs assessment indicated a Strong-R Assessment of low risk to reoffend and that Defendant would benefit from a mental health evaluation with follow-up treatment as recommended, family counseling, and alcohol/drug assessment with follow-up treatment as recommended.

The State submitted a sentencing memorandum in advance of the sentencing hearing. While acknowledging that Defendant was eligible for probation and judicial diversion, the State argued that an alternative sentence was not warranted. In the memorandum, the State argued the confinement was necessary to avoid depreciating the seriousness of the offense and that "confinement [wa]s suited as a deterrent to others likely to resort to the use of firearms when they feel aggrieved." The State argued that Defendant had no hesitation about committing a crime when the risk to human life was high and had a lack of remorse, having referred to the incident as a "misunderstanding."

At the hearing, the victim testified that he and his wife felt "terrified" of Defendant and that he had emotional injuries as a result of the incident. He described being "heartbroken over what's happened." The victim described Defendant as a "danger to society" and stated that she needed help. The victim expressed concern if Defendant was "put back out, . . . , into society, . . . , any time soon."

Jody Lockhart, the criminal investigator for the Twelfth Judicial District Attorney's Office, testified. Mr. Lockhart was formerly employed by the Sequatchie County Sheriff's Office as a patrol officer, investigator, and supervisor. He also held certifications as a Tennessee State firearms instructor as well as an instructor in various subjects like "defensive tactics," interviewing, and interrogation. He testified that during his employment with the sheriff's department from 2000 to 2022 the number of cases involving gun violence increased.

Defendant called Frances Barker to testify. Mrs. Barker was a soldier and family assistance specialist with the Tennessee Army National Guard. While she did not personally know Defendant, Mrs. Barker testified that there were community care resources for veterans for both physical and mental health and that Defendant was eligible for a referral to take advantage of those services through Jim Patterson, the Veterans Assistance Officer in Sequatchie County.

The State reiterated the arguments from its memorandum. Counsel for Defendant argued that there was no proof that Defendant knew other persons were present at the victim's house when she discharged the gun. Additionally, Defendant argued that her sentence could not be enhanced because she possessed or employed a weapon because that was inherent in the offense. Defendant argued that her age, 67, and lack of criminal convictions along with her honorable military discharge and lengthy marriage made her a good candidate for an alternative sentence. Defendant "admitted her wrong and made an apology" making her conduct "probably more reckless than intentional." Defendant argued that she had been in custody from April 9 to the date of the hearing, February 16, more than 10 months, and that she was at low risk to reoffend. Defendant asked for probation or diversion or both.

At the conclusion of the hearing, the trial court denied diversion "on the grounds that to grant the diversion would have a - - have a detrimental effect on deterrence and might serve to depreciate the severity of the offense." Moving on to other forms of alternative sentencing, the trial court noted that the presentence report was "very thorough" and that Defendant's situation was "unique" because she was not "a violent criminal." The trial court pointed to the lack of criminal history, save one "simple assault charge in general sessions court that appears to have been dismissed." The trial court found that Defendant was 67, with "mental health issues that need to be addressed" but determined that it was not in "societal interest" to "stick" Defendant in "what is effectively cold storage with the TDOC through straight confinement." As a result, the trial court determined that "the idea of deterrence is being served somewhat by my denial of diversion." The trial court noted that Defendant should be considered a favorable candidate for alternative sentencing options and ordered Defendant to serve a sentence of split confinement, ordering Defendant to serve a portion of her sentence in incarceration before being released to supervised probation.

After the hearing, the trial court reiterated its denial of diversion. The trial court noted that Defendant had a lack of remorse after firing a weapon multiple times, specifically shown when she referred to her actions as a "misunderstanding" that resulted in "offending Mr. Boston." The judgment forms reflected that Count 1, reckless

endangerment, was dismissed in consideration of the guilty plea.[1]  Defendant was sentenced to five years for the aggravated assault conviction, a Class C felony.  Defendant was required to serve 11 months and 29 days before release to probation for four years and one day.  In addition, Defendant was prohibited from contact with the victim, his wife, and his children.  Defendant was ordered to receive a mental health evaluation and follow all recommendations as well as receive an alcohol and drug assessment and follow all recommendations.  Defendant was ordered to meet with Jim Patterson immediately upon release from jail and to forfeit the "black Rock Island 200 .38 Special" and "H & R Shotgun 1971 12G Pump-action Shotgun" to "SCSD."  On Count 3, Defendant was sentenced to 11 months and 29 days and required to serve 75% prior to eligibility for work release, furlough, trusty status and rehabilitative programs.

Defendant appeals.

*Analysis*

On appeal, Defendant argues that the trial court abused its discretion because even though the trial court cited two factors in denying her request for judicial diversion, it failed to consider any other factor and it failed to explain why those two factors would outweigh any of the other considerations for diversion.  Defendant urges this Court to conduct a de novo review and grant the diversion request.  The State, on the other hand, argues that the trial court properly considered both deterrence and the circumstances of the offense in its "brief" decision to deny diversion and that even if the trial court's ruling is deemed inadequate, a de novo review would be appropriate.

A defendant is eligible for judicial diversion if he or she is found guilty or pleads guilty or nolo contendere to a Class C, D, or E felony, has not been previously convicted of a felony or Class A misdemeanor, has not been previously granted judicial or pretrial diversion, and is not seeking deferral for certain sexual offenses.  *See* T.C.A. § 40-35-313(a)(1)(B)(i).  There is no dispute that Defendant was eligible for judicial diversion.  "Eligibility under the statute does not, however, constitute entitlement to judicial diversion; instead, the decision of whether to grant or deny judicial diversion is entrusted to the discretion of the trial court."  *State v. King*, 432 S.W.3d 316, 323 (Tenn. 2014).  The trial court must consider several common law factors:

> "(a) The accused's amenability to correction, (b) the circumstances of the offense, (c) the accused's criminal record, (d) the accused's social history, (e) the accused's physical and mental health, and (f) the deterrence value to

---

[1] There is no judgment form dismissing Count 1.  On remand, the trial court should enter a judgment form for Count 1, reckless endangerment, if the trial court denies diversion.

the accused as well as others. The trial court should also consider whether judicial diversion will serve the ends of justice—the interests of the public as well as the accused."

*Id*. at 326 (quoting *State v. Parker*, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996)). "[T]he trial court must weigh the factors against each other and place an explanation of its ruling on the record." *Id*. (citing *State v. Electroplating, Inc.*, 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998)).

When the trial court considers the common law factors, "specifically identifies the relevant factors, and places on the record its reasons for granting or denying judicial diversion," then this Court will "apply a presumption of reasonableness and uphold the grant or denial so long as there is any substantial evidence to support the trial court's decision." *Id*. at 327. Our supreme court has explained:

Although the trial court is not required to recite all of the *Parker* and *Electroplating* factors when justifying its decision on the record in order to obtain the presumption of reasonableness, the record should reflect that the trial court considered the *Parker* and *Electroplating* factors in rendering its decision and that it identified the specific factors applicable to the case before it. Thereafter, the trial court may proceed to solely address the relevant factors.

*Id*. Failure to consider the common law factors results in a loss of the presumption of reasonableness, and this Court will either conduct a de novo review or remand the case to the trial court for reconsideration. *Id*. "The determination as to whether the appellate court should conduct a de novo review or remand for reconsideration is within the discretion of the reviewing court." *Id.* at 328.

Here, the trial court's ruling in its denial of diversion consisted of one sentence: the trial court denied diversion "on the grounds that to grant the diversion would have a - - have a detrimental effect on deterrence and might serve to depreciate the severity of the offense." In our view, this evinces a failure of the trial court to consider and weigh the common law factors, resulting in a loss of the presumption of reasonableness in the trial court's ruling. In our discretion, we choose to reverse and remand the matter to the trial court for reconsideration.

*Conclusion*

For the foregoing reasons, the judgment of the trial court is reversed. On remand, the trial court should ensure the record "reflect[s] that the trial court considered the *Parker*

- 6 -

and *Electroplating* factors in rendering its decision and that it identified the specific factors applicable to the case before it. Thereafter, the trial court may proceed to solely address the relevant factors." *Id.* at 327. If the trial court again denies diversion, the trial court should enter an order dismissing Count 1, reckless endangerment as specified in the plea agreement.

_____
TIMOTHY L. EASTER, JUDGE